Leon BARTLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17592.

United States Court of Appeals
District of Columbia Circuit.

Argued May 1, 1963.

Decided May 29, 1963.

Mr. Rawlings Ragland, Washington, D. C. (appointed by this court) with whom Mr. Thomas J. Schwab, Washington, D. C., was on the brief, for appellant.

Mr. Max Frescoln, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before BURGER, WRIGHT and MC-GOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

Under an indictment charging second degree murder, appellant was convicted of manslaughter by a jury and received a sentence of five to fifteen years imprisonment. At the trial he sought to establish that he acted in self-defense. Three errors are assigned on this appeal as requiring reversal. Since we find that one of these bore so closely upon the jury's consideration of the merits of appellant's defense, we reverse because of it and do not discuss the other two in detail.

I

The decedent, Calvin Nicholson, had once been on friendly terms with one Mrs. Catherine Belle Tardy. In the early hours of the morning of July 29, 1961, Mrs. Tardy and the appellant, Leon Bartley, after leaving a dance which they had attended together, were accosted in the street by Nicholson. There was testimony by Mrs. Tardy, offered by

the Government as a witness,[1] that Nicholson, after striking Mrs. Tardy, advanced in a menacing manner upon Bartley, flourishing a blackjack or a club of some kind. Bartley testified to the same effect at the trial,[2] adding that Nicholson had first struck him in the face with his open hand. Bartley's story was that Nicholson had then slipped and fallen while Bartley was backing away from him, and that then Nicholson, wielding some kind of a club, renewed his advance upon Bartley. At this juncture the fatal shot was fired by Bartley from a gun which he was in the habit of carrying.[3] There is some confusion in the record as to whether Nicholson was shot before he had regained his feet completely, but, in any event, a purpose to renew his assault upon Bartley could reasonably have been inferred. Accordingly, the question of whether he was or was not carrying a weapon of some kind was intimately related to the merits of Bartley's claim that he acted in self-defense.

On this question of fact the Government produced a witness, Mrs. Marbury, an acquaintance of Mrs. Tardy and Bartley who had been in their company a few minutes before the shooting. Mrs. Marbury testified that, from the window of an adjoining building, she saw Nicholson overtake Mrs. Tardy and Bartley in the middle of the street and scuffle with them. On direct examination she said that Nicholson had something in his hand —"a stick or something." At this point Government counsel informed the court that the prosecution was surprised by this testimony and asked permission to cross-examine. The record indicates that counsel, in support of this request, handed to the court a written statement previously taken from Mrs. Marbury. After examining it, the court said "Very well" in response to the prosecutor's request. Thereafter there was read to Mrs. Marbury the following question and answer from a statement which she had given to the police on the day of the shooting:

"Question. Did you see any weapon in Calvin Nichols (sic) hand when he and Leon Bartley were on the platform?

"Answer. No, he didn't have anything like a stick or a knife, and I didn't see anything."

Although Mrs. Marbury then said that this answer by her was not in the written statement when she signed it, or at least that she could not recall that it was, the Government produced the officer who had taken the statement and he

1. One of the errors urged on this appeal was that Government counsel, after having put Mrs. Tardy on the stand as part of the prosecution's case, asked her this question: "Did you tell them (the members of the Homicide Squad) that you would do everything you could to get Leon Bartley out of this?" Over objection, the witness was permitted to answer "yes." No claim of surprise was made by the Government and the problem of alleged prior inconsistent statements is not involved. The question could only have had an impeaching purpose, however, and the objection was well taken. See Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811 (1958); Young v. United States, 94 U.S. App.D.C. 62, 214 F.2d 232 (1954); and 3 Wharton, Criminal Evidence, § 948 (12th ed.; 1955).

2. On close reading we do not regard Bartley's testimony at the trial as varying significantly from what was said by him in a written statement obtained from him by the police after his arrest and booking, but before arraignment. The third error assigned on this appeal was the admission of this statement. No objection was made by the defense to this admission. See Williams v. United States, 113 U.S. App.D.C. 7, 303 F.2d 772, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962); and Rogers v. United States, 115 U.S.App.D.C. ——, 318 F.2d 223.

3. Homicides of the kind here involved are always dangerously latent when one of the principals happens to be possessed of a gun. This emphasizes the importance of unremitting effort to detect and to punish the illegal possession of lethal weapons. A count for this crime could perhaps have been included in the indictment under D.C.Code § 22–3204.

testified that it was in the statement when it was read and signed by Mrs. Marbury.

## II

The propriety of the admission of Mrs. Marbury's prior inconsistent statement turns upon the express statutory provision made in this jurisdiction for such admission. Section 14–104 of the D.C. Code is addressed to this precise subject:

"Whenever the court shall be satisfied that the party producing a witness has been taken by surprise by the testimony of such witness, such party may, in the discretion of the court, be allowed to prove, *for the purpose only of affecting the credibility of the witness*, that the witness has made to such party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause; but before such proof can be given the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made such statements and if so allowed to explain them." [Emphasis added.]

Although the claim is made on this appeal that the trial judge erred in making no finding of surprise, we note that the statute is not cast in terms of formal findings, and it is clear that the judge, after examining the written statement exhibited to him at the time surprise was asserted, was properly satisfied that surprise had occurred and so expressed himself.

■■ The error resides, rather, in the treatment of the statutory purpose for which the prior inconsistent statement was admissible. This is stated in terms to be that "only. of affecting the credibility of the witness." The differentiation, of course, is between this rigorously limited objective, and the one of proving as a fact what is contained in the statement. The crucial character of this distinction has been recognized and emphasized by this Court. In Wheeler v. United States, 93 U.S.App.D.C. 159, 166, 211 F.2d 19, 26 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140, rehearing denied, 348 U.S. 852, 75 S.Ct. 21, 99 L.Ed. 671 (1954), we said that proper implementation of this statute included an explicit admonition to the jury by the court at the time a prior inconsistent statement is admitted, and also an instruction at the close of the trial, that the statement may be considered only as bearing on credibility. In this case neither was done. See also Robinson v. United States, 113 U.S.App. D.C. 372, 308 F.2d 327 (1962); cf. Bedell v. United States, 63 App.D.C. 31, 68 F.2d 776 (1934).

The Government presses upon us the fact that the defense made no objection to the admission of Mrs. Marbury's prior contradictory statement, nor did it request the court then or thereafter to caution or instruct the jury as to the limited role which that statement could play in their deliberations. The point is appropriately made, but in the context of this case it cannot be decisive. Rule 52(b) of the Federal Rules of Criminal Procedure authorizes us to take account of "[P]lain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court."

Appellant's fate in the hands of the jury depended solely and entirely upon the jurors' view of his claim of self-defense. Bulking large in their appraisal was the jury's estimate of the degree to which appellant was justifiably in fear of the infliction upon him by the decedent of serious physical harm. Critical to the measurement of this fear was the fact of whether the decedent was proceeding to the attack with or without a weapon of some sort. Absent Mrs. Marbury's prior statement, the only evidence before the jury was to the effect that the decedent did have a weapon and, in this state of the record, the jury would have had no basis for drawing a contrary inference. But such an inference could have been. drawn from Mrs. Marbury's

prior statement, assuming that such statement was before the jury as proof of what it contained rather than merely as bearing on credibility.

Without the protection of an admonition or instruction from the court to the latter end, we cannot say that the jury did not give weight, when it was not entitled to do so, to the prior written statement and feel itself free to choose between the conflicting versions. See Belton v. United States, supra, and Young v. United States, supra. So viewed, the error made in the application of the statute, as construed by us in the Wheeler case, supra, was replete with substantial danger to the appellant, and requires that he be afforded a new trial.

It is so ordered.