**UNITED STATES of America,**
**Appellee.**

v.

**Darron G. GILLIAM, Appellant.**

**No. 72–1161.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 28, 1973.

Decided Sept. 12, 1973.

James V. Pickrel and J. H. Krug, Washington, D. C. (both appointed by this Court), for appellant.

Kevin W. Carmody, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Barry W. Levine, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT and MacKINNON, Circuit Judges, and ROBERT VAN PELT,* Senior District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

This is an appeal from a conviction upon a jury verdict of guilty on three counts of armed robbery and on five counts of assault with a dangerous weapon. The indictment also charged robbery but the jury reached no verdict on the robbery counts. Defendant was given concurrent imprisonment sentences although the sentences on various counts differed in length. They were made consecutive to another sentence previously imposed.

On appeal appellant argues that the trial court erred in (1) allowing into evidence a prior statement of a Mrs. Gross and evidence concerning her prior statement, (2) not instructing the jury that the prior statement could not be considered as substantive evidence, and (3) allowing the prosecutor to argue that the matters in the statement should be taken as fact, and that they revealed a consciousness of, guilt. We reverse on the failure to instruct. It is thus unnecessary to consider the other assignments.

The incident giving rise to the indictment was the armed robbery by two men of a McDonald's restaurant in Washington, D. C. During the robbery several employees observed the men at close range. Two officers in a scout car almost immediately received word of the robbery and a description of the two participants. About a half mile from the scene they spotted Ricardo Gross, who fitted the description given, apprehended him, and recovered a loaded gun, $118, and a slip of paper wrapped around the money, which had the name "Keller" on it and which it was stipulated was in Keller's handwriting. Keller was the manager of the restaurant and present at the robbery. Gross was immediately identified by Keller as one of the robbers. Cashiers of two of the cash registers which were robbed, namely, Alice Scott and Claudia Brown, testified on behalf of the Government and identified Gilliam as one of the robbers. Both women had previously identified Gilliam from a photograph, and subsequently when a lineup was held they again identified him as the robber. The cashier, at another of the cash registers which was robbed, at the lineup identified someone other than Gilliam. All Government witnesses identified Gross as the other robber.

A defense of alibi was presented. The first witness called was Gross, who admitted that he committed the robbery and stated that appellant was not the other robber. On cross-examination Gross, when asked to name the other robber, claimed his Fifth Amendment privilege against self-incrimination. On being directed to answer, the record discloses some difficulty on his part in remembering the name, and other matters were developed which a jury could consider in determining the weight to be given his testimony. Gilliam's fiancee, a Miss Thomas, and a cousin, Sarah Rush, also testified in effect that they and Gilliam were at the Rush house at the time of the robbery as fixed by the Government witnesses. Gilliam also took the stand stating that he was at the Rush house at the time of the robbery.

* Sitting by designation pursuant to Title 28, U.S.C. § 294(d) (1970).

Without repeating the alibi evidence, and its inconsistencies, it is sufficient to say that a jury could within reason have disbelieved the alibi. On the other hand, alibi is a jury question and some jurors conceivably could believe appellant and his witnesses.

During the examination of Gross the trial judge called counsel to the bench and stated: "I got the impression from somebody that this man is scared to death, and that his family has been threatened by Gilliam." (T. 102) There was discussion at the bench as to threats made by telephone to Gross' wife, who was in court. A statement was made as to her position and as to the claimed threats.

At the close of appellant's case, the trial judge inquired as to the whereabouts of Mrs. Gross. The prosecutor replied that she was present in court against her will, but not under subpoena. The court then advised the prosecutor that he might call her as a hostile witness, which was done. She was first examined out of the presence of the jury. Later, in the presence of the jury she admitted her voluntary presence in court and stated that she was there under extreme pressure. At this point the prosecutor requested that he be allowed to treat her as a hostile witness and the request was granted.

Mrs. Gross was asked whether she had told a Detective Groat that she had seen her husband with the defendant Gilliam late in the afternoon of January 9, 1970, which she denied (T. 191). (The robbery was January 9, 1971.) She admitted she had seen them together at 1:00 p. m. but denied she said that to Detective Groat.

She was then asked: "Directing your attention now to the day after, January 10, 1971, did you receive any phone calls?" and answered: "Yes I did." When asked about the number, she stated: "Four, to be exact." She stated that she didn't know who they were from, that the person didn't identify himself and that she had no idea who he was.

A written statement was then marked as the Government's Exhibit No. 8 and shown to her. She identified her signature at the bottom. It was offered and received in evidence over defendant's objection and thereupon read to the jury. In it she referred to a telephone call from an unknown man and then about ten minutes later to a phone call from the defendant who, among other things, said: "I am going to kill you . . . ." She stated she had signed the statement but had not read it. The purpose of signing it was that she was told that it would help her husband.

Detective Groat was then called as a witness. Objection was made that he would be impeaching Mrs. Gross and that absent a claim of surprise such impeachment was improper. The court overruled the objection, the prosecutor stating that he was not relying on surprise.

Groat's testimony was that Mrs. Gross had told him that her husband had been with Gilliam the afternoon of January 9th, the day of the robbery. He also testified as to what she told him as to the threatening phone calls, and that the statement was an accurate report of what she had told him.

It is the claim of appellant that under section 14–102 of the District of Columbia Code the admission of the written statement and evidence concerning it was improper impeachment. This statute reads in part:

"When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness had made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause."

It is the Government's claim that it did not rely on surprise and that section

14-102 does not apply. It rather claims that Mrs. Gross was declared a hostile witness by the trial court and that she was subject to impeachment on that basis.

▇ We find it unnecessary to respond to the appellant's first contention that the statement and evidence concerning it were improperly admitted. Assuming *arguendo,* that the statement was properly admitted, despite the absence of surprise by the prosecutor, since the witness was hostile, nevertheless, the trial court committed reversible error under the facts of this case by failing to give an immediate cautionary instruction regarding the limited purpose for which the evidence could be used.

This is not a case where in his charge to the jury the court told the jury of the limited use of the evidence. Had he done so the harmless error argument would have greater weight. This is not a case where the statement was used only for impeachment. Here the prosecutor argued that the matters in the statement revealed a consciousness of guilt of appellant and should be taken as fact.

▇ It is the well settled rule in this circuit that a prior inconsistent statement used to impeach a witness is admissible solely to affect credibility of the witness and is not to be considered as support for the truth of its contents. D.C.Code § 14-102 (1967); Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967); Coleman v. United States, 125 U.S.App.D.C. 246, 371 F.2d 343 (1966); Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965); Bartley v. United States, 115 U.S.App. D.C. 316, 319 F.2d 717 (1963); Byrd v. District of Columbia, 43 A.2d 46 (D.C. Mun.App.1945).

This is also the rule when a witness is impeached because he has been determined to be hostile. United States v. Johnson, 427 F.2d 957 (5th Cir. 1970);

Lerma v. United States, 387 F.2d 187 (8th Cir. 1968); Goings v. United States, 377 F.2d 753 (8th Cir. 1967); Brooks v. United States, 309 F.2d 580 (10th Cir. 1962); Tripp v. United States, 295 F.2d 418 (10th Cir. 1961). In Brooks v. United States, *supra,* at 582 the court stated:

"As a general proposition, the testimony of a witness, after a proper foundation has been laid, may be impeached by showing former declarations, statements, or testimony which are contradictory or inconsistent with the answers given at a trial. The purpose of the impeachment is to discredit the witness, not to establish the existence of the fact in dispute. There is little conflict in the rule that prior statements of a witness who is not a party to an action, and whose statements are not binding as admissions, are admissible only to impeach or discredit the witness, and are not competent substantive evidence of the facts to which the former statements relate. This rule applies in instances when the court, in its discretion, permits a party to impeach its own witness who is shown to be recalcitrant and hostile."

Thus it is clear that the evidence regarding the prior statement of Mrs. Gross could be admitted only to impeach her testimony at trial. However, as above noted, the trial court did not give any cautionary instruction relating to the limited purpose for which the evidence could be considered either at the time the evidence was admitted or in its charge to the jury.

▇ The law in this circuit is well settled that under section 14-102 the trial court is required to give, *sua sponte,* a cautionary instruction and that except in cases of an explicit waiver by defense counsel,[1] failure to do so constitutes reversible error. Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967); Coleman v. United States, 125 U.S.App.D.C. 246, 371 F.2d 343

1. Troublefield v. United States, 125 U.S.App.D.C. 339, 372 F.2d 912 (1966).

(1966); Bartley v. United States, 115 U.S.App.D.C. 316, 319 F.2d 717 (1963).

The Government asserts that these cases are inapplicable here since they all arose under section 14–102, where the prosecutor claimed surprise and in this case the statements were admitted because the witness was hostile. However, even if we were to accept the Government's argument, the trial court committed reversible error on the basis of United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971).

In *McClain* the defendant was charged with second degree murder for pushing his wife off a porch causing injuries which resulted in her death. The defendant was convicted of manslaughter but the conviction was reversed for admitting, without a cautionary instruction, evidence of a prior act of violence committed by the defendant against his wife. The prosecuting attorney, for the avowed purpose of proving malice, attempted to elicit testimony from the defendant's daughter that prior to the homicide defendant had struck his wife with a chair causing injuries requiring medical attention. The court held that the trial court should have instructed the jury that the chair incident could be considered only on the issue of malice and after they had ascertained that the defendant had in fact pushed his wife over the porch. The court noted that:

> "Whenever prosecution evidence is introduced which is admissible only for a limited purpose, the defendant is entitled to instructions which inform the jury of the proper use which may be made of that evidence. And the failure of defense counsel to request such an instruction does not automatically bar this court from reaching the error if the instruction is not given." *Id.* at 245.

The court in *McClain,* as we do in the instant case, held that there had been no explicit waiver of an instruction and concluded its opinion by saying:

> "In addition, we find the problem raised by this case indistinguishable from Jones v. United States, 128 U.S. App.D.C. 36, 385 F.2d 296 (1967), in which this court held that when a party seeks to impeach any witness by a prior inconsistent statement, then it is plain error not to give an *immediate* instruction limiting the effect of the prior statement, unless the party explicitly waives the instruction. We would hold that whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. The danger of prejudicial effect from such evidence is so great that only an immediate and contemporaneous instruction can be considered sufficient to protect defendants. As long as we continue to have rules of evidence which admit testimony for some purposes but not for others, we must guard against its misuse by the jury." *Id.* at 246.

The Government attempts to distinguish *McClain* by citing a number of cases which it claims limits the *McClain* rationale.[2] However, we find them inappropriate and that the basic rationale of *McClain* controls here. In the instant case the evidence admitted was highly prejudicial and inflammatory concerning alleged threats made by the defendant against the witness. The error in this case was compounded when the Government was allowed to argue substantively that the alleged threats by the defendant showed a consciousness of guilt on his part. The Government argues that any substantive reference by the prosecutor to the prior statement of Mrs. Gross must have been harmless, citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). However, the closing argument cannot be read in isolation but must be viewed

---

2. United States v. Fench, 152 U.S.App.D.C. 325, 470 F.2d 1234 (1972); United States v. Thomas, 148 U.S.App.D.C. 148, 459 F.2d 1172 (1972); United States v. Mizzell, 146 U.S.App.D.C. 399, 452 F.2d 1328 (1971); United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971).

in connection with the failure to give the necessary cautionary instruction. Seen in this light, the following language from *Kotteakos* is appropriate:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand * * *. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Id.* at 764–765, 66 S.Ct. at 1248.

Notwithstanding the arguable inconsistencies in the alibi testimony and the positive identification of appellant by two of the three cashiers who were robbed, we cannot say in view of the prosecutor's use of the statement as substantive evidence, that substantial rights of the appellant were not violated. If he is clearly guilty, as the Government claims, another jury, after a fair trial, will so conclude.

We reverse the conviction appealed from and remand the case for a new trial.

Reversed and remanded.