Linwood E. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 8683.

District of Columbia Court of Appeals.

Argued en banc Sept. 16, 1976.

Decided May 22, 1978.

Walter G. Birkel, Jr., Washington, D. C., appointed by this court, with whom Mac Asbill, Jr., Washington D. C., also appointed by this court, was on the brief, for appellant.

Peter E. George, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the petition for rehearing en banc, for appellee.

Before REILLY, Chief Judge,* and KELLY, FICKLING,** KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges.

YEAGLEY, Associate Judge:

The opinion of the division, 356 A.2d 639, which we reconsider en banc, summarized the facts substantially as follows. Appellant and two codefendants were convicted by a jury of the armed robbery of a pastry deliveryman at gunpoint of a sum of money and two pies. A bystander copied the license plate number of the vehicle in which the robbers left the scene, and police stopped the car shortly thereafter. A passenger in the back seat, codefendant Harry Allen, attempted to flee, but was pursued and apprehended. The three persons who remained—appellant, the driver, and a front seat passenger—were ordered from the car. A search of the vehicle produced the two pies, and a gray coat said to have been worn by one of the robbers. Police found money in a pocket of the gray coat and on appellant's person, and recovered a gun and a wallet from near the place where the fleeing passenger, codefendant Allen, was arrested. The deliveryman was unable to identify appellant as a participant in the robbery.

At trial, following the denial of appellant's motion for judgment of acquittal, codefendant Allen admitted his own direct involvement in the crime and gave exculpatory testimony on appellant's behalf. He stated that during the robbery and its immediate aftermath, appellant had been incapacitated by the effects of narcotics withdrawal and was oblivious to the fact that a robbery was taking place.

In accordance with earlier advice to the court and defense counsel, and after laying a foundation on cross-examination, Allen was impeached by the testimony of the government's rebuttal witness, Officer Bobby Collins, who testified that shortly after the arrest of appellant and his codefendants, Allen had made a statement to him denying his own active involvement and implicating appellant as a prime participant in the robbery. Appellant neither objected to the line of questioning nor requested an immediate instruction that such testimony could be considered only for a limited purpose. In its final charge to the jury, the trial court included a general instruction on the limited purpose for which evidence of a prior inconsistent statement could be used, but did not refer specifically to the testimony in question.

Appellant contends that the trial court erred in failing to immediately instruct the jury, sua sponte, that Officer Collins' testimony describing Allen's prior inconsistent statement was hearsay and thus could not be considered for the truth of its content but only to evaluate Allen's credibility.[1] A

---

* Judge Reilly was Chief Judge of the court at the time of oral argument; his status changed to Chief Judge, Retired, on September 27, 1976. He participated in all phases of the en banc disposition of this case.

** Judge Fickling participated at argument and in the postargument conference prior to his death on March 6, 1977.

1. For purposes of this appeal, we accept appellant's contention that Allen's out-of-court statement, restated in court by Officer Collins, was hearsay and thus inadmissible as substantive evidence. Indeed, this is the traditional view, McCormick, Evidence § 251 at 604 (1972), which is today justified primarily by the lack of opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is reported by the witness. Id. at § 245 at 583; Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

majority of the division agreed with appellant, reversed the trial court, and held, on the authority of *Lofty v. United States,* D.C.App., 277 A.2d 99 (1971), that the trial court's failure to give an immediate cautionary instruction, sua sponte, following admission of testimony of a prior inconsistent statement was plain error per se under Super.Ct.Cr.R. 52(b). *Johnson, supra* at 641. Upon reargument and reconsideration en banc, we conclude that the division majority's reliance on *Lofty* was misplaced, and hold that appellant may not invoke the plain error rule to overcome his failure to object below. Accordingly, his conviction is affirmed.

The division majority, in arriving at the result which we now reverse, relied primarily on *Lofty v. United States, supra.* There, we held that a trial court's failure, sua sponte, to immediately instruct the jury on the limited admissibility of a prior inconsistent statement introduced by the government to impeach its own witness, upon being surprised by his adverse testimony,[2] was plain error requiring reversal. In so holding, we relied on a statement from *United States v. McClain,* 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971), that "whenever evidence [is brought in which is admissible] only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction."

We now conclude that the opinion in *Lofty* unnecessarily and inappropriately broadened the scope of the plain error rule and ran afoul of the well-settled requirement that trial errors must be objected to at the time they occur if they are to be considered on appeal. Super.Ct.Cr.R. 30. *Watts v. United States,* D.C.App., 362 A.2d 706, 708–09 (1976) (en banc); *Adams v. United States,* D.C.App., 302 A.2d 232, 234–35 (1973); *Dixon v. United States,* D.C. App., 287 A.2d 89, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972); *Wooten v. United States,* D.C.App., 285 A.2d 308, 309 n. 3 (1971); *Bunter v. United States,* D.C.App., 245 A.2d 839, 841–42 (1968).[3] In *Watts v. United States, supra* at 709, we explained that this requirement purported "to discourage the intentional withholding of objections by defense counsel," *see United States v. Curry,* 358 F.2d 904, 912 (2d Cir.), *cert. denied,* 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966), and observed:

> The obvious reason for requiring that objections to instructions be made before the jury retires is to afford the trial court an opportunity to correct any instructional defect and thereby avoid error which otherwise might necessitate a new trial. [362 A.2d at 708–09.]

The plain error rule invites a shrewd attorney who has a weak defense to conclude that his best strategic response to trial court errors is to remain silent, hoping thereby to "sow error in the record." When

---

We consider this view less than convincing in the instant case, however, in which the declarant, Allen, was available to explain the discrepancy if appellant had chosen to recall him as a witness, McCormick, Evidence § 251 at 603–04 (1972); 3A Wigmore, Evidence § 1018 at 996 (Chadbourn rev. 1972). We note, moreover, that under these circumstances the jury would have had the opportunity to observe Allen's demeanor, thus satisfying another basis of the hearsay rule. McCormick, Evidence § 245 at 582 (1972).

Thus, Allen's statement came substantially with the safeguards of examined testimony, and the trial court could, in its discretion, have admitted it for the truth of the matter asserted. *See United States v. DeSisto,* 329 F.2d 929, 933 (2d Cir.), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); *Jett v. Commonwealth,* 436 S.W.2d 788, 792 (Ky.1969); *State v. Igoe,* 206 N.W.2d 291, 297 (N.D.1973); *Gel-*

*haar v. State,* 41 Wis.2d 230, 163 N.W.2d 609, 614 (1969), *cert. denied,* 399 U.S. 929, 90 S.Ct. 2250, 26 L.Ed.2d 797 (1970); Fed.R.Evid. 801(d).

2. That situation is specifically covered by statute. D.C.Code 1973, § 14–102, provides:

 When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause.

3. *See* P. Robinson, *A Proposal for Limiting the Duty of the Trial Judge to Instruct the Jury Sua Sponte,* 11 San Diego L.Rev. 325, 328 (1974).

appellate courts readily grant relief under such circumstances by resort to the rule, they destroy the incentive of defense counsel to point out errors during the trial—a practice which is essential to a strong, adversary judicial system. We take this opportunity to make clear that there is a line beyond which we will not make an exception to the general rule that an unobjected-to error will not be noticed on appeal; otherwise resort to the exception will continue to expand endlessly until the exception becomes the rule. In the instant case, for example, a decision in one close case, *Lofty*, was relied on by the division majority as authority to extend the plain error exception to another but less justifiable situation.

Perhaps it was recognition of this that prompted us, in *Dixon v. United States, supra,* to limit severely the scope of *Lofty*. There we held, *inter alia*, that the trial court is not absolutely required, immediately after a defendant has been impeached by a prior conviction, to sua sponte instruct the jury on the limited use of the impeachment testimony. We said that we did not view the reference in *Lofty* to the above-cited statement from *United States v. McClain, supra,* "as controlling on facts not involving impeachment of one's own witness by prior inconsistent statements."[4] *Dixon v. United States, supra* at 97. We distinguished *Lofty* from the circumstances presented in *Dixon,* observing that "the high probability of jury confusion in the 'prior inconsistent statement' cases which required the exceptional use *sua sponte* of an immediate cau-

tionary instruction by the trial court is not present in the case of 'prior convictions' evidence used for impeachment." *Dixon v. United States, supra* at 99. We noted that while a per se instruction rule might be appropriate under circumstances in which the government claimed surprise at its own witnesses' testimony and sought to introduce a prior inconsistent statement of that witness, such a rule was unnecessary where such surprise, and attendant jury confusion, was lacking.

The instant case is more analogous to *Dixon* than to *Lofty*. Like *Dixon* and unlike *Lofty,* the instant case involves impeachment by the government of a defense witness. Thus we do not have the situation presented in *Lofty,* in which the government, surprised by the testimony of its *own* witness, impeached that witness and thereby conceivably conveyed to the jury the impression that additional substantive evidence was being offered. Such an impression is not as likely fostered when the government impeaches a defense witness, and the prejudice presumed in the *Lofty* situation just is not present.

In any event, we now hold that to the extent that it conferred on the trial court an absolute sua sponte obligation to issue an immediate cautioning instruction whenever evidence is brought in which is admissible only for a limited purpose, *Lofty* is overruled.[5] We thus complete the assault on that decision begun in *Dixon* and continued, recently, in *Watts v. United States, supra.*[6]

4. We observed that *McClain* has itself been restricted significantly by subsequent circuit court decisions. *E. g., United States v. Mizzell,* 146 U.S.App.D.C. 399, 452 F.2d 1328 (1971); *United States v. Bobbitt,* 146 U.S.App.D.C. 224, 450 F.2d 685 (1971), and noted that "the language of *McClain,* cited by appellant and quoted above, was merely part of an alternative holding, which . . . failed to examine the implications for trial procedure that would arise from the application of such a broadly worded rule." *Dixon v. United States, supra* at 98. We cannot agree with the holding in *McClain, supra,* and decline to follow it here.

5. We intend no violence to, and reaffirm the validity of *Lofty's* narrower holding that a sua sponte cautioning instruction is required when

a party, surprised by its own witness, impeaches the witness with a prior inconsistent statement in accordance with D.C.Code 1973, § 14–102; *See* note 2, *supra.*

6. In *Watts,* which post-dated decision and publication of the division's opinion in the instant case, we refused, without extended analysis, to follow *Lofty*. In *Watts,* as in *Lofty,* the government was surprised by testimony of its own witness, and impeached her by a prior inconsistent statement. No cautioning instruction was required and none was given. We observed that *Lofty* had been limited by *Dixon,* and found no prejudice to appellant from the lack of a cautioning instruction since the witness acknowledged the truth of her prior state-

In so doing, we return to the long standing principle in this jurisdiction, from which *Lofty* and the cases on which it relied departed, that:

> Except upon essential principles of law concerning which it is the duty of the trial judge to instruct the jury whether requested or not, there is no duty to instruct in the absence of a request. [*George v. United States,* 75 U.S.App. D.C. 197, 201, 125 F.2d 559, 563 (1942) (citations omitted).] [7]

 This is not to say that an appellate court should never recognize plain error or that it should affirm a judgment in the absence of timely objection where it is clear that appellant was denied a fair trial. Advice to the jury on the basic elements of the offense or on the standard of reasonable doubt are but two examples of factors not merely desirable but essential to a fair trial. Here, however, the defect was not of that nature. This court has the discretionary power to notice defects raised for the first time on appeal if substantial rights were clearly and prejudicially denied below.[8]

In *Dixon v. United States, supra,* we discussed the exercise of that discretion:

> We believe that the wiser approach is to examine on a case by case basis the particular type of evidence sought to be introduced and then determine . . . if an immediate cautionary instruction,

*sua sponte* by the trial court, is required to prevent confusion on the part of the jury and thereby to protect the defendant's interests. [*Id.* at 98.]

The fatal flaw in *Lofty* was its failure to appreciate that plain error is not the rule but is the exception to the rule. In applying Super.Ct.Cr.R. 52(b), *supra* note 8, the court neglected to apply Super.Ct.Cr.R. 30 which provides, in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Although Super.Ct.Cr.R. 30 is not controlling on this court we may, as with Rule 52, review errors in the exercise of our discretion. *Watts v. United States, supra* at 708 n. 3. The rule would be of little effectiveness unless enforced by this court. Of more importance, Rule 30 is but a codification of an old Supreme Court holding in *Burns v. United States,* 274 U.S. 328, 47 S.Ct. 650, 71 L.Ed. 1077 (1927), wherein the Court said at 336, 47 S.Ct. at 653:

> Exceptions to a charge must be specifically made in order to give the court opportunity then and there to correct errors and omissions, if any. *Pennsylvania R. R. Co. v. Minds,* 250 U.S. 368, 375, 39 S.Ct. 53, 63 L.Ed. 1039 and cases cited; *Allis v.*

---

ment and it thereupon became part of her in-court testimony, subject to cross-examination, for the jury to consider the truth of its content. *Watts v. United States, supra,* at 711–12 n. 11.

7. Our position is buttressed by two cases from the Second Circuit. In *United States v. Ballentine,* 410 F.2d 375 (2d Cir. 1969), as in the instant case, a codefendant was called as a defense witness and was impeached subsequently by a prior inconsistent statement. The court held that reversal was not compelled by the absence of an immediate cautioning instruction: "Appellant made no request for such [an instruction] at trial; his failure to make such a request bars him from raising the issue for the first time on appeal." *Id.* at 377. In *United States v. Curry,* 358 F.2d 904 (2d Cir.), *cert. denied,* 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966), the court found no error in the admission of the accused's prior inconsistent statement without an accompanying, unrequested cautioning instruction: "[t]he better

opinion is that the *opponent of the evidence must ask for that instruction,* otherwise, he may be supposed to have waived it as necessary for his protection." *Id.* at 912, quoting 1 Wigmore, Evidence § 13 at 301 (3d ed. 1940) (emphasis in original opinion).

8. Super.Ct.Cr.R. 52(b), identical to its federal counterpart, provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Although Fed.R.Crim.P. 54 specifically makes Fed.R.Crim.P. 52 applicable in the United States Courts of Appeals, the Superior Court rules contain no such provision. Nonetheless, where there is plain error concerning instructions, such an error is subject to review in our discretion. *Watts v. United States, supra* at 708 n. 3; *Bunter v. United States, supra;* D.C. Code 1973, § 11–721(e).

*United States,* 155 U.S. 117, 122, 15 S.Ct. 36, 39 L.Ed. 91 [1894]. Even if some of the instructions were erroneous, the exceptions taken were not such as to require a new trial.

■ The reason for requiring timely exceptions and requests with respect to final jury instructions is identical to the reason for requiring timely exceptions to trial errors: to give the trial court the opportunity to correct errors and omissions. *See Pennsylvania R. R. Co. v. Minds, supra* 250 U.S. at 375, 39 S.Ct. 53, 63 L.Ed. 1039; *Allis v. United States, supra. Cf. Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (failure to object to jury charge fatal to claim of constitutional error on collateral attack).

■ Acceptance of appellant's contention here would prospectively deny this court the opportunity to make reasoned, case by case determinations that substantial rights were or were not prejudicially denied below. We deem this contrary to both case law and common sense. We hold that it is not plain error, per se, for a trial court not to give an immediate cautioning instruction on the use of evidence admitted for a limited purpose when no such instruction is requested.[9]

■ We hold, further, after having reviewed the entire record, that the trial court's failure in the instant case to provide an immediate, unrequested cautionary instruction was not plain error.

■ Under the plain error standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness of the trial. *Watts v. United States, supra* at 709; *Adams v. United States, supra; Bunter v. United States, supra.* In the instant case, the trial court gave the jury a final charge which included an instruction on the limited purpose for which evidence of a prior inconsistent statement could be used. Thus, any prejudice resulting from the trial court's failure to give such an instruction earlier was obviated sufficiently to ensure that appellant received a fair trial.[10]

The opinion of the division is reversed, and appellant's conviction is affirmed.

*So ordered.*

KELLY, Associate Judge, dissenting, with whom MACK, Associate Judge, joins:

We can agree that it is a rare case in which this court has not followed the settled rule that an unobjected to error will not be noticed on appeal. But if the doctrine of plain error is ever to apply, I suggest that it must be applied here.

Government testimony at the trial described the details of a robbery, the stopping of a car driven by appellant shortly after the incident and the failure of the complaining witness to identify appellant as one of the robbers. A codefendant, Harry Allen, gave testimony exculpatory of appellant by denying that appellant had partici-

9. In *Humes v. United States,* 170 U.S. 210, 211 12, 18 S.Ct. 602, 603, 42 L.Ed. 1011 (1898), where error was assigned for failure of the court to give certain instructions, the Supreme Court said:

We cannot regard as error the omission of the court to give instructions which were not asked. In *Isaacs v. United States,* 159 U.S. 487, 491, 16 S.Ct. 51, 40 L.Ed. 229, Mr. Justice Brown said: "*It is no ground for reversal that the court omitted to give instructions, where they were not requested by the defendant.* It is sufficient that the court gave no erroneous instructions." [Citations omitted; emphasis added.]

10. We note, and give weight to the fact, that during trial, defense counsel, Mr. Armstrong, indicated he believed that as a tactical matter objections should not always be raised even when they might appear meritorious.

MR. ARMSTRONG: Well, Your Honor, on behalf of Mr. Johnson, I am aware of the problem that [the prosecutor] has just mentioned [about a lack of objections].

Counsel for these defendants have to make tactical decisions as to whether or not to maintain a low profile or object at every point. I made many decisions, as I have made other decisions in the course of the trial, regardless of if my client disliked my failure to cross-examine [the witness] earlier. There is some truth in what [the prosecutor] is saying with respect to further examination, the course it may take, as Mr. Koenick proceeds. But I would have to make judgments as I go along.

pated in the robbery. He stated, as the majority notes, that throughout the robbery and its immediate aftermath appellant had been incapacitated by the effects of narcotics withdrawal and oblivious to the fact that a robbery had occurred. The witness was impeached in rebuttal with a contrary statement he had given after his arrest in which he implicated appellant in the robbery. The statement used to impeach Allen effectively controverted appellant's sole defense to the crime and, in the absence of an immediate instruction on its limited admissibility, was most certainly viewed by the jury as substantive evidence of appellant's guilt.[1] In my judgment, the failure to give the cautionary instruction as to the only direct evidence implicating appellant in the crime was plain error necessitating reversal of appellant's conviction. See generally United States v. Freeman, 169 U.S.App. D.C. 73, 514 F.2d 1314 (1975); United States v. Leonard, 161 U.S.App.D.C. 36, 494 F.2d 955 (1974); Jones v. United States, 128 U.S. App.D.C. 36, 40, 385 F.2d 296, 300 (1967); Coleman v. United States, 125 U.S.App.D.C. 246, 371 F.2d 343 (1966), cert. denied, 386 U.S. 945, 87 S.Ct. 979, 17 L.Ed.2d 875 (1967).

In the division opinion, citing Dixon v. United States,[2] we acknowledged that generally where a party fails to request an instruction on limited admissibility of evidence, the failure of the trial judge to give such an instruction, sua sponte, will not be considered on appeal.[3] We recognized as well, however, that there are occasions where the potential for jury confusion is so great in admitting prior inconsistent statements for a limited purpose that an imme-diate cautionary instruction is required.[4] This is such a case.

Underlying the requirement that an immediate limiting instruction be given is the policy of restricting the jury's exposure to hearsay evidence. Jones v. United States, supra. See also United States v. Leonard, supra. As hearsay, codefendant Allen's prior inconsistent statement could not have properly been considered by the jury for the truth it stated. It could be considered as proving simply that the statement had been made since the mere fact that a witness has made a contradictory statement is relevant to an evaluation of credibility. It is apparent, however, that in reaching its verdict the jury credited Allen's statement as substantive evidence of what had transpired in the robbery and that it was encouraged to do so by the prosecutor who, in closing argument, improperly emphasized the statement in a way which indicated that it could be so viewed. Considered as substantive evidence, Allen's prior inconsistent statement effectively controverted appellant's sole defense of nonparticipation in the crime.

There was no objection by counsel to the use of the prior inconsistent statement and no request for an immediate instruction. It is not helpful, however, to inject into the analysis of our problem gratuitous remarks about shrewd counsel sowing error in the record for what is in issue here is the fairness of the trial itself, not the dereliction of counsel. Moreover, the trial court is not without responsibility to guard against the injection into the trial of prejudicial error at the moment that possibility arises.[5] Be-

1. The en banc majority seemingly considers this central issue in the case of little importance.

2. D.C.App., 287 A.2d 89, 98, cert. denied, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

3. Johnson v. United States, D.C.App., 356 A.2d 639, 641 (1976).

4. Id.

5. The desirability of implanting this thought in the minds of the jury at this juncture is emphasized by the fact that the charging of the jury by the judge comes after the closing argu-ments. There is always the possibility that the prosecutor, by accident if not by design, will be imprecise in his characterizations of the impeaching statements. Unless there has been a warning at the time the statements come in, the jury will have no intimation that it should treat the statements differently from other evidence. To be told this by the court for the first time after the prosecutor's argument may, as a practical matter, be too late. Even in the absence of comment by the prosecutor, in a trial of any length several days may elapse between impeachment and the final charge. During this interval, a jury may erroneously reflect upon the impeachment testimony as if it were direct

cause of that grave danger here, the trial judge should have been alert to avert the error and could have easily done so.

The majority has now disavowed, at least in part, this court's opinion in *Lofty v. United States,* D.C.App., 277 A.2d 99 (1971). *Lofty* was not dispositive of the instant case, however. We speak here not of government surprise by unexpected testimony of its own witness but of jury confusion occasioned by the unexplained use of a prior inconsistent statement. It is true that the same vice—the likelihood that the jury will consider the statement as substantive evidence rather than a limited attack on credibility—is present in both situations, but *Dixon* teaches that each case is to be decided on its own unique facts. *Dixon v. United States, supra* at 98. The majority does not explain why there should be a difference between the impeachment of one's own witness and impeachment of a defense witness. Indeed, there is none. *Jones v. United States, supra,* 128 U.S.App. D.C. at 40, 385 F.2d at 300. *Regardless of* whose witness is being impeached, it is unrealistic to assume that jurors hearing testimony of a prior inconsistent statement would consider that statement as anything but substantive evidence unless they were instructed otherwise.

I close, as I began, by noting again that appellate courts do not readily grant relief under the plain error rule. Yet not to do so under the facts of this case is to ignore prejudicial error affecting substantial rights and the essential fairness of appellant's trial. I would reverse appellant's conviction and remand for a new trial.

evidence. Jurors are not supposed to crystallize their views of the case until they withdraw to deliberate, but they cannot be supposed to be listening to testimony in an intellectual vacuum. Having the jury aware of the true status of the impeaching statement throughout this period avoids this possible prejudice. Of course, a final instruction is always important as a reminder of the original caution. [*Coleman v. United States, supra,* 125 U.S.App.D.C. at 249, n. 3, 371 F.2d at 346 n. 3.]