**Robert SIMMONS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 7822.**

District of Columbia Court of Appeals.

Argued June 19, 1974.

Decided Sept. 24, 1976.

Rehearing En Banc Denied Dec. 9, 1976.

Walter J. Smith, Jr., appointed by the court, for appellant.

Edward D. Ross, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, John A. Terry, James F. McMullin, and Joseph F. McSorley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.

REILLY, Chief Judge:

This is an appeal from convictions of three counts of armed robbery in violation of D.C.Code 1973, §§ 22–2901 and –3202, and one count of robbery in violation of D.C.Code 1973, § 22–2901. Appellant assigns as error (1) the trial court's denial of his pretrial motion to suppress a photograph of appellant displayed to complaining witnesses and the identification testimony of these witnesses; (2) the government's cross-examination of appellant's principal alibi witness with respect to her purported attempts to influence two complaining witnesses; and (3) the trial court's failure to give sua sponte an immediate cautionary instruction relating to the rebuttal testimony of these two witnesses.

About 10 o'clock one November night, four armed men—one carrying a sawed-off shotgun—burst into a house in the northeast section of the city and announced: "This is a stickup." Thirty or 40 people were present, most of whom were engaged in gambling. They were ordered to raise their hands. Two of the intruders then relieved those present of their money and other valuables while the man with the shotgun kept his weapon trained on the victims.

Ten days later, James Kelly of the Metropolitan Police Department received a radio message to assist another officer in investigating a "suspicious blue automobile" at a designated location. Upon arriving, Kelly saw that officer talking to two men in front of the car, one of whom was appellant. Observing an open canvas bag laying on the sidewalk one and one-half feet from the car, Kelly inquired as to its contents. Appellant replied that it contained tools. Kelly then picked up the bag and noticed the barrel of a revolver protruding from it. Removing a layer of cloth, he discovered two more revolvers. He yelled to his fellow officer, who arrested appellant for carrying a pistol without a license, but the latter's companion fled through a nearby alley and was not apprehended.

The following day,[1] appellant, along with other individuals taken into custody the previous night, was taken through the lineup room at police headquarters for routine inspection by the detectives reporting for duty. One of these detectives was Robert Pettis, who did not know that appellant had been arrested until reporting to work that morning, but had previously received information that appellant had participated in the robbery of the gambling house. When Pettis saw appellant in the lineup, he took him aside and had him photographed.

A few days afterward, Detective Pettis displayed the photograph, along with eight other photographs of men with similar features, to Russell Whitted and Thomas Wil-

---

1. Appellant was released shortly thereafter and was never prosecuted on the pistol charge.

liams, who were eyewitnesses to the robbery. Both identified appellant as the robber who carried the shotgun. As a result of these identifications, an arrest warrant was issued and appellant was taken into custody and charged with armed robbery. At a subsequent police lineup, Whitted and George Sessoms, another eyewitness to the crime, also identified appellant but Williams was unable to do so.

At trial, however, all three witnesses identified appellant in open court as the man carrying the shotgun during the robbery. These same witnesses also testified as to their pretrial identifications. The photograph of appellant taken at police headquarters at the direction of Detective Pettis was admitted into evidence.

Appellant did not testify, but presented an alibi defense. His principal witness was Shirley Farley, his girlfriend. She told the jury that he was with her on the night in question from 7:30 to 10:30.[2] On cross-examination, she was asked if she had attempted to influence Whitted and Williams but she denied any such conduct. The government called Whitted and Williams as rebuttal witnesses to impeach Farley's testimony and to illustrate her bias. Whitted and Williams testified that a woman similar in appearance to Miss Farley approached them at the house where the robbery occurred, accompanied by a man named "Redwood" who introduced her as appellant's wife. Presenting herself as a school teacher, she offered to make restitution for the money taken from them in exchange for their agreement not to pursue their complaint.

On this evidence, the jury found appellant guilty of three counts of armed robbery and one count of robbery, and he was sentenced to concurrent terms of imprisonment of five to 15 years on each conviction.

With respect to the denial of his pretrial motion, appellant contends that the search of his bag was unreasonable and hence the photograph taken of him at police headquarters and the identification testimony based on this photograph should have been suppressed as the fruits of an unlawful search under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We need not reach appellant's first contention for, even assuming the illegality of the search and appellant's arrest on the gun charge, the causal connection with the photograph and the identification testimony was "so attenuated as to dissipate the taint". *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). As the Supreme Court stated in *Wong Sun, supra*, 371 U.S. at 487–88, 83 S.Ct. at 417:

> We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, *Evidence of Guilt*, 221 (1959).

Officer Pettis' encounter with appellant at police headquarters was entirely fortuitous. Although he had information that appellant was involved in the armed robbery, he had no prior knowledge that appellant had been arrested for another offense and would be available to be photographed. This is not exploitation, but happenstance. *Bond v. United States*, D.C. App., 310 A.2d 221, 225 (1973); *accord, People v. McInnis*, 6 Cal.3d 821, 100 Cal.

---

2. The other alibi witness, appellant's caseworker, testified that the records at the halfway house where appellant had been staying showed that he reported in at 11:30 on the night of the robbery—some 45 minutes after the robbers had departed the gambling premises.

Rptr. 618, 494 P.2d 690, *cert. denied,* 409 U.S. 1061, 93 S.Ct. 562, 34 L.Ed.2d 513 (1972).[3]

■ Appellant also contends that the cross-examination of Shirley Farley as to her purported attempts to influence Whitted and Williams was improper, and that it was also error to admit rebuttal testimony contradicting her denial of any such attempts. We disagree. The thrust of this testimony was to demonstrate that the witness Farley had been willing to pay money to keep appellant from going to prison— thereby disclosing great bias in furthering the cause of his defense. As we said in *White v. United States,* D.C.App., 297 A.2d 766, 768 (1972), ". . . bias on the part of a witness is an eminently proper subject for cross-examination . . . ." *See Thompkins v. United States,* D.C.App., 236 A.2d 443 (1967); *Johnson v. United States,* D.C.Mun.App., 146 A.2d 573 (1958); *Wynn v. United States,* 130 U.S. App.D.C. 60, 397 F.2d 621 (1967); *Villaroman v. United States,* 87 U.S.App.D.C. 240, 184 F.2d 261 (1950). We are also persuaded that this evidence, introduced to impeach Shirley Farley, was not unduly prejudicial to appellant. The classic rule requiring that the witness be questioned on the point before contradictory statements may be admitted was satisfied by cross-examination.[4] Moreover, the rebuttal testimony from the witnesses called by the government was not to show that in her pretrial approach to these witnesses, Miss Farley was acting in concert with or at the direction of the defendant, but merely that she was biased in the defendant's favor, thereby detracting from her credibility in the eyes of the jury.

■ Appellant's final contention is that the trial court erred in failing to give sua sponte a cautionary instruction with respect to the rebuttal testimony of Williams and Whitted. As his counsel did not request such instruction as required by Super.Ct.Crim.R. 30, such failure is no ground for reversal unless amounting to "plain error". *Massey v. United States,* D.C.App., 320 A.2d 296 (1974).

Appellant relies heavily upon *United States v. McClain,* 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), a reversal of a murder conviction by a divided court where evidence of a prior act of violence by the accused against the victim, his wife, offered solely for the purpose of proving malice, was received without a limiting instruction sua sponte by the trial court. The majority opinion stated that " . . . whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. . . ." 142 U.S.App.D.C. at 218, 440 F.2d at 246.

A doctrine that appellate courts have a duty to set aside convictions on the ground of "plain error" solely because of a trial judge's failure or unwillingness to preserve a right which defendant's counsel has not invoked either by objection or a request for an instruction is a policy not easy to reconcile with the general principles of our adversary system. It is one thing to have a right, and quite another to be compelled to exercise it. Such considerations soon caused the United States Court of Appeals for this circuit to limit the holding in *McClain* to its actual facts. *United States v. Bobbitt,* 146 U.S.App.D.C. 224, 450 F.2d 685 (1971).

---

3. Moreover, as the Supreme Court noted in *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), the "prime purpose [of the exclusionary rule] is to deter future unlawful police conduct" . . . rather than "to redress the injury to the privacy of the search victim . . . ."

To suppress the photograph and identification testimony so tenuously connected with the initial search, even assuming its illegality, would have a minimal deterrent effect on similar police conduct in the future.

4. 3A Wigmore on Evidence, § 1025, Chadbourn Revision (1970).

A recent decision of the United States Supreme Court has made it clear that appellate courts should be extremely chary of resorting to "plain error". In *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), a federal court of appeals had set aside a state court conviction of a defendant who had been tried wearing identifiable prison clothes, only to be reversed by the Supreme Court. In the plurality opinion, Chief Justice Burger said at 1697:

> Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

> Accordingly, although the State cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. (Footnote omitted.)

Mr. Justice Powell, with Mr. Justice Stewart concurring, made a similar point at 1698:

> This case thus presents a situation that occurs frequently during a criminal trial —namely, a defendant's failure to object to an incident of trial that implicates a constitutional right. As is often the case in such situations, a timely objection would have allowed its cure. As is also frequently the case with such trial-type rights as that involved here, counsel's failure to object in itself is susceptible to interpretation as a tactical choice. *Ante*, at 1694, 1695.

The danger of permitting defense counsel to remain silent with respect to testimony subject to objection and then asserting plain error on appeal has made this court reluctant to reverse judgments solely on the ground that sua sponte cautionary instructions should have been given when a particular piece of evidence was introduced. In *Dixon v. United States*, D.C. App., 287 A.2d 89 (1972), we deemed it unnecessary for a court to give sua sponte an immediate cautionary instruction concerning impeachment of a defendant by means of a prior conviction. *See also Robinson v. United States*, D.C.App., 317 A.2d 508 (1974), where lack of a limiting instruction was upheld with respect to a prior criminal act of some substantive relevance; *Watts v. United States*, D.C.App. (en banc), 362 A.2d 706 (1976, n. 11); and *Tuckson v. United States*, D.C.App., 364 A.2d 138 (1976, n. 7).

We have adopted a different policy where a witness called by the government surprises the prosecutor by giving testimony completely at odds with his pretrial version of the facts and is then impeached by presentation of his inconsistent earlier statements. In such situations, we have deemed error failure of the trial judge to point out immediately to the jury that it may consider the prior statements only for assessing the credibility of the witness rather than as proof of the facts set forth therein. *Lofty v. United States*, D.C.App., 277 A.2d 99 (1971). But there we were dealing with a statute, D.C.Code 1973, § 14–102, which expressly provides that the statements at variance with the sworn testimony can be received only for that limited purpose.

Clearly, the *Lofty* decision is not controlling here for there is no statute which prescribes that the testimony now challenged was admissible for only a limited purpose. The cautionary instruction appellant says should have been given was one warning the jury that evidence of the pretrial approach to the government witnesses by a woman resembling the alibi witness was not to be taken as proof that the defendant had instigated the attempt to tamper with the government's case. As it was not apparent on its face that the jury would be inclined to place such a construction on the incident, it was certainly incumbent upon defense counsel to draw this possibility to the trial judge's attention and to request an appropriate instruction.[5] Accordingly, we perceive no error in the court's failure sua sponte to caution the jury.

*Affirmed.*

---

5. In addition, the possibility should be weighed that defense counsel for tactical purposes was not displeased with the absence of any cautionary instruction. As sometimes occurs, defense counsel may feel that an immediate cautionary instruction will serve only to reinforce the jury's impression of evidence that they might otherwise have considered insignificant. *See United States v. Bobbitt*, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971).