Samuel M. **WASHINGTON**, Appellant,

v.

**UNITED STATES**, Appellee.

Leroy **FERGUSON**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 12604, 12842.

District of Columbia Court of Appeals.

Argued Nov. 8, 1978.

Decided Jan. 24, 1979.

Jack H. Krug, Washington, D.C., appointed by the court, for appellant Samuel M. Washington.

Herbert B. Dixon, Jr., Washington, D.C., appointed by the court, for appellant Leroy Ferguson.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge:

Appellants Washington and Ferguson were charged jointly in seven counts of an indictment and individually in separate counts. After trial by jury, Washington was convicted of felony murder, D.C.Code

1973, § 22–2401; armed robbery, D.C.Code 1973, §§ 22–2901, –3202; assault with a dangerous weapon, D.C.Code 1973, § 22–504; and carrying a pistol without a license, D.C.Code 1973, § 22–3204. Ferguson was found guilty of armed robbery, D.C.Code 1973, §§ 22–2901, –3202. Appellants bring this consolidated appeal alleging jointly or individually that the trial court erred in (1) failing, sua sponte, to give an immediate cautionary instruction on the use of a prior inconsistent statement; (2) instructing the jury that upon certain findings it "must" find appellants guilty; (3) improperly allowing such cross-examination of a defense witness as would suggest that appellant Ferguson wanted another witness to flee the jurisdiction; (4) denying a mistrial based on the government's announcement, in the presence of the jury, that it was handing over *Jencks* material to defense counsel; and (5) overruling an objection to the statement during closing argument of government counsel's belief in the veracity of a government witness.

I

The scenario of this case is involved and confusing. By 3:30 a. m. on February 6, 1976, Walter Adams, Jr., had died from a gunshot wound to the head, Henry Sutton had been robbed at gunpoint, and the other occupants of 900 French Street, N.W., had been assaulted by two armed individuals.

Government evidence placed Sutton, Adams, Daisy Farrish, Thomas Herrion, Michael Rosebar, and several other individuals in the kitchen of Sutton's house, 900 French Street, N.W., in the early morning hours of February 6, 1976. Sutton was an unlicensed whiskey dealer who apparently opened his house, after hours, to customers and friends for drinking, playing cards, and other unspecified amusements. At about 2:00 a. m., Rosebar and Sutton argued over $4, and Rosebar left the premises.

At about the same time in another part of the city, Ferguson invited his sister,

Mary, to accompany Washington and himself as they went out to borrow some money. The three left Mary's house in a car owned by Ferguson's friend, Patricia Davis.[1] Mary testified that she saw a shotgun and a handgun in the car. They proceeded to an alley near the French Street address and parked the car. Leroy Ferguson and Washington exited the car and instructed Mary to remain behind while they entered Sutton's house. Ferguson was, at that time, carrying the shotgun; Washington, the handgun.

Appellants Ferguson and Washington entered the house at the same time as Rosebar and his friend, Revon Stewart. All four went to the kitchen where Rosebar renewed the argument about his money. Another occupant offered Rosebar $5 to stop the argument which Rosebar accepted. Rosebar then left, leaving Stewart at the house. Francis Owens, awakened by the disturbance, came downstairs only to be met by Washington's gun.

Washington ordered Owens to the floor, but she ran under the table. Sutton hid behind the refrigerator. After Ferguson turned off the kitchen lights, two shots were fired and someone pushed over the refrigerator. Sutton turned on the lights; Ferguson turned off the lights; and Sutton turned on the lights once again. Ferguson then demanded money,[2] and, along with Washington, ran. Appellants and Mary went to Mary's house. Ferguson told his sister to take the guns to a nearby halfway house. She did so and there gave the guns to an unidentified individual.

Mary Ferguson testified to the above scenario at trial. Mary, Sutton, and Owens made courtroom identifications of both appellants.

The defense presented Revon Stewart to testify that the appellants were not the individuals who participated in the incident. The testimony of Ellis Trappio, Shirley Ferguson, and Patricia Davis impeached vari-

---

1. Mary Ferguson testified that the car was a Vega. Patricia Davis testified that she owned a Buick Skylark and has never owned a Vega.

2. At the time, Sutton had only $4.

ous aspects of Mary Ferguson's story. Diane Lockhart testified for appellant Washington, saying that he was at her brother's house when she left at 11:00 p. m. on February 5, and when she returned to the house at 5:00 a. m. on February 6.

The government produced Detective Chaillet in rebuttal to testify that Revon Stewart had, before trial, identified Ferguson as one of the gunmen.[3] It also produced a witness to impeach the testimony of Patricia Davis.

## II

■ Appellants argue that the trial court erred in failing to give sua sponte, an immediate cautionary instruction concerning Detective Chaillet's impeachment, through a prior inconsistent statement, of Revon Stewart. Appellants would have had the trial court instruct the jury on the limited purpose for which it may consider the existence of the prior statement. Appellee argues that appellants waived their right to appeal on this issue by affirmatively declining to request a final instruction on prior inconsistent statements. After the court concluded its jury instructions, counsel for the government noted to the trial judge that he may want to instruct the jury on the subject of prior inconsistent statements. Counsel for each defendant declined the offer by the trial judge to so instruct.[4]

We agree with appellants that the actions of their trial counsel did not constitute a waiver. In order to waive an instruction on the limited purpose of particular testimony, there must be a manifest or explicit waiver. *Lofty v. United States,* D.C.App., 277 A.2d 99, 101 (1971). *See Jackson v. United States,* D.C.App., 354 A.2d 869, 874 (1976). There was no explicit waiver of an *immediate* cautionary instruction here.

■ We cannot, however, find reversible error in the trial court's failure to give an immediate instruction. In our decision in

*Johnson v. United States,* D.C.App., 387 A.2d 1084 (1978) (en banc), we restricted the holding in *Lofty* to a situation in which a party is surprised by its *own* witness and must therefore impeach that witness' testimony. We there followed a line of cases restricting reversals under the plain error standard for failure to instruct the jury to "essential principles of law concerning which it is the duty of the trial judge to instruct the jury whether requested or not . . . ." *George v. United States,* 75 U.S.App.D.C. 197, 201, 125 F.2d 559, 563 (1942), quoted in *Johnson v. United States, supra,* 387 A.2d at 1088. *See Watts v. United States,* D.C.App., 362 A.2d 706 (1976) (en banc); *Dixon v. United States,* D.C.App., 287 A.2d 89, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

Having discarded the concept of a per se sua sponte responsibility to caution the jury, we turn to the question of whether the facts of this case would require a sua sponte instruction. This is not an "[occasion] where the potential for jury confusion is so great in admitting prior inconsistent statements for a limited purpose that an immediate cautionary instruction is required." *Johnson v. United States, supra* at 1090 (Kelly, J., dissenting) (footnote omitted). Although Revon Stewart was a key witness for the defense, his testimony could not have been so important or his impeachment so confusing as to warrant reversal on the record here. Were that the case, trial counsel would not have declined the court's offer to give a final instruction on the subject. To hold otherwise would be to elevate trial tactics to a position above the ends of justice.

## III

■ Appellants' second assignment of error centers on the court's instruction to the jury, that, given a finding that the government has proven all the elements of the crime, the jury "must" find the defendant

---

3. When first interviewed, Stewart identified one of the gunmen as Larry Ferguson. He later changed his identification to Leroy Ferguson.

4. Appellant Washington's contention that this action amounted to ineffective assistance of counsel is without merit.

guilty. In so instructing, the trial court ignored our teachings in *Watts v. United States, supra* at 711. There, although we found no error[5] in the giving of an instruction identical to the one complained of here, we exercised our supervisory authority to sanction the prospective use of the following instruction:

"If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, *it is your duty* to find him guilty. On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty. . . ." [*Id.* (emphasis added).]

While we do not violate our en banc holding in *Watts*, and thus must affirm the trial court's action, we reiterate here our preference for the suggested new instruction.

### IV

Appellant Ferguson argues that the trial court erred in allowing the government to cross-examine Patricia Davis as to whether she told Mary Ferguson that appellant Ferguson wanted her to secrete herself until after the trial. Specifically, appellant renews his objection made at trial to the question: "Did you ever ask Miss Ferguson to go to North Carolina until the trial was over?" After the court overruled appellant's objection, the government continued its line of questioning, asking the witness whether she told Ms. Ferguson that appellant wished her to flee the jurisdiction and whether the witness herself ever offered Ms. Ferguson money if she would go to North Carolina. The witness answered these questions in the negative.

■ The trial court ruled that the questions were proper to show bias. We agree. The law as to the propriety of cross-examination to show bias was succinctly stated in *Simmons v. United States*, D.C.App., 364

A.2d 813, 816 (1976). There we quoted *White v. United States*, D.C.App., 297 A.2d 766, 768 (1972), for the often repeated proposition that "bias on the part of a witness is an eminently proper subject for cross-examination . . . ." We noted on those facts, as did the trial court note on the facts here, that appellant did not suffer any undue prejudice.

■ In the present case, the trial court's implicit determination that the probative value of the testimony outweighs any prejudicial effect of that testimony will not be reversed absent a showing of abuse of discretion. *Smith v. United States*, D.C.App., 392 A.2d 990, 993 (1978); *Springer v. United States*, D.C.App., 388 A.2d 846, 856 (1978). We perceive no abuse of discretion here.

Appellant Ferguson argues that the facts of *Simmons* distinguish it from the present case. He points to the statement by the court there that ". . . the rebuttal testimony from the witnesses . . . was not to show that . . . [the allegedly biased witness] was acting in concert with or at the direction of the defendant . . ." *Simmons v. United States, supra* at 816. In the present case, there was no allegation of concerted or directed action. Government counsel did ask Ms. Davis, "Is it your testimony that you did not tell Mary Ferguson . . . Thursday of last week that Leroy said . . . to go to North Carolina until after the trial was over?" No proffer was made that appellant either directed the witness to approach Ms. Ferguson or that he acted in concert with the witness. Indeed, throughout the line of questioning, reference to Leroy Ferguson was made only once. Even if the jury could have drawn an inference of complicity, that inference would not have influenced their decision. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

### V

■ The appellants, individually, offer additional assignments of error, none of

---

**5.** That case involved application of the plain error standard. The court noted, however, that "[w]e find no error—much less plain error—in the trial court's use of the term 'must find' . . . ." *Watts v. United States, supra* at 711.

which do we find compelling. Appellant Washington argues correctly that government counsel's statement, in closing argument, that "I believe Detective Chaillet's testimony," should not have been allowed to stand. That error, however, does not rise to a level sufficient to justify a reversal. Appellant Ferguson's argument that government counsel should not have announced, in the presence of the jury, that he was handing over *Jencks* material is also true. *Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), *aff'd on other grounds*, 133 U.S.App.D.C. 317, 410 F.2d 1016, *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). Once again, however, appellant has not shown any prejudice resulting from the act. The subject of the *Jencks* material was a minor witness whose testimony was merely cumulative.

## VI

Finally, appellant Ferguson's contention that the cumulative impact of the various assignments of error warrant reversal is not persuasive. Accordingly, the convictions on appeal are

*Affirmed.*