**Kim Ellery LOFTY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5434.**

District of Columbia Court of Appeals.

Argued Jan. 26, 1971.

Decided May 10, 1971.

Peter H. Wolf, Washington, D. C., for appellant.

Jerome Wiener, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Robert C. Crimmins, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and PAIR and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

This appeal is from judgments of conviction for attempted burglary in the second degree, D.C.Code 1967, § 22–1801(b) (Supp. III, 1970), and unlawful entry, D.C.Code 1967, § 22–3102.

The appeal raises several questions, the most important of which is whether plain error was committed when the trial judge failed to give, sua sponte, an immediate cautioning instruction as to the limited purpose for which prior inconsistent extra-judicial statements of a witness were being admitted into evidence. Finding this claim of error to be substantial, we reverse.

On June 21, 1970, shortly before 10:00 p. m., four young men were observed by security guards entering, through a fence opening, the yard of a warehouse complex situated at 6101 Blair Road, N. W., Washington, D. C. Three of the young men were observed to climb a scaffold leading to the roof of a building occupied by the Handley Motor Company and then proceed onto the roof of the Blair Liquor Store at 6111 Blair Road where they pried open the cover of an exhaust vent. The fourth youth, later identified as Leslie Latisal, remained on the ground and was shortly thereafter apprehended by Randolph Russell and William Hughes, security guards for the complex. The other three youths escaped but Leslie Latisal identified them, first, to the security guards and then to Detective Robert G. Denell of the Metropolitan Police Department, as Kim "Bomber" (Kim Ellery Lofty, appellant herein), Simon Gales, and another youth whose name he did not know.

Simon Gales was later arrested and Detective Denell obtained from him a statement, witnessed by his mother, which identified appellant as one of the three youths who, after Latisal's arrest, fled from the scene.

At trial the prosecutor informed the court that Leslie Latisal, a witness for the Government, had "changed his story this morning" and that the prosecutor did not know what the witness was going to say. Latisal thereupon testified that, immediately prior to his arrest, he and Simon Gales were chasing Gales' dog and that he had last seen appellant around 6:00 p. m. that day.

The Government then called Simon Gales who testified that he had seen appellant earlier that afternoon at McDonald's, but that appellant had not accompanied them to the Blair Road complex. At this point the prosecutor requested a bench conference, announcing that he was "surprised" by Gales' testimony since he had a statement signed by the witness which was inconsistent therewith.

The prosecutor requested permission to use the statement to refresh the witness' recollection, saying "I think you should tell the jury it goes to his credibility, only, and not to the facts of the case." The trial judge remarked that he did not know if that procedure would be proper because the signed statement might bring out involvement of the witness in a crime thus raising self-incrimination problems. Over the objection of appellant's counsel, the statement was received into evidence solely for the purpose of impeaching the witness. At this point the prosecutor inquired of the court, "Do you want to tell the jury that now?" The court replied, "No, no; on my instructions. I take it, you will draw my attention to that instruction?"

During the interrogation of Gales which followed, Gales admitted that he signed the statement but denied stating that appellant had said, "[L]et's go to the liquor store on Blair Road and break in and get the money." Gales could not remember stating that "Leslie was told to be on the lookout and Bomb and the other dude * * * climbed the scaffold * * * and went onto the roof," nor could he remember saying that, while they were on the roof of the liquor store, they heard Leslie say, "[T]he man got me." When asked why he signed the statement if it was not true, the witness replied that he wanted to "hurry up and leave." Mrs. Gales, the mother of Simon Gales, testified that she was present when, after giving the information contained therein, her son signed the statement.

Appellant did not, at that time nor did he at the close of all the evidence, request a cautioning instruction respecting the prior inconsistent written statement of Gales. The court, however, in its instructions to the jury before submitting the case, cautioned that the written statement of Gales was not to be considered as evidence of appellant's guilt, and that the jury was to consider the statement as affecting only the credibility to be given Gales' testimony.

During the course of their deliberations, the jury requested and were given further instructions in regard to the written statement of Gales, and shortly thereafter, returned their verdicts of guilty.

Appellant's principal contention is that plain error was occasioned when the trial judge failed to give immediately and sua sponte a cautioning instruction to the jury concerning the limited purpose for which the written statement of the witness Gales was received into evidence, and that such error was not cured by the court's instructions to the jury at the close of the case.

The Government urges, however, that since no limiting instructions were requested by appellant when the evidence was admitted and since the court, at the close of all the evidence, thoroughly instructed the jury concerning the limited purpose of the statement, and again in response to the jury's request for additional instruction, the possibility of actual prejudice was very remote.

D.C.Code 1967, § 14–102[1] permits, under prescribed conditions, the impeachment of a witness upon a showing of surprise. Construing this section, the court, in Coleman v. United States, 125 U.S.App.D.C. 246, 249, 371 F.2d 343, 346 (1966), declared:

> From this day forward, therefore, we read the statute as contemplating a ruling by the trial court which comprehends, in addition to a finding of surprise, an *immediate* representation to the jury as to the purpose for which the impeaching statements are being permitted to come in. Any other course is unnecessarily pregnant with dangers to the cause of justice as well as to economy in the employment of our already strained judicial resources; and both these interests are *too important to be left to the alert-*

*ness of defense counsel* when there is an easy and obvious way to safeguard them at all events. The prospective operation we give this new approach is, we think, consistent with the interests of justice. * * * [Emphasis added.]

Thus, in United States v. McClain, 440 F.2d 241 (D.C.Cir., decided January 27, 1971), the court held, as we do in the case at bar, that "whenever evidence is brought in which is admissible only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction." *See also and compare*: Troublefield v. United States, 125 U.S.App.D.C. 339, 372 F.2d 912 (1967); Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967); United States v. Alexander, 139 U.S.App.D.C. 163, 430 F.2d 904 (1970).

Reversed and remanded for a new trial.

---

[1]. When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney state-

ments substantially variant from his sworn testimony about material facts in the cause. * * *