Thomas MAURA, Appellant,

v.

UNITED STATES, Appellee.

No. 87–410.

District of Columbia Court of Appeals.

Argued Feb. 7, 1989.
Decided March 21, 1989.

Paul Victor Jorgensen, Washington, D.C., appointed by this court, for appellant.

Su Zann Lamb, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

After a jury trial, appellant was convicted of unlawful entry, D.C.Code § 22–3102 (1981). The court sentenced him to a suspended sentence of five days and placed him on probation for one year, with probation to end when appellant completed twenty hours of community service. The trial court allowed the prosecution, over defense objection, to ask each of appellant's character witnesses whether he had heard of appellant's arrest for attempted robbery in 1986. Appellant claims the trial court abused its discretion in allowing these questions and, even more specifically, in failing to give *sua sponte* a limiting instruction. We affirm.

## I.

The government's evidence at trial showed that appellant Maura had been stopped on the Georgetown University campus in Healy Hall by Special Police Officer Piper on January 18, 1986. When Piper learned that Maura was not a student or a faculty or staff member and had no legitimate reason for being on campus, she orally barred Maura from the campus. Maura also read and signed a barring notice, which stated that if Maura returned to the Georgetown campus he would be arrested for unlawful entry. Piper encountered Maura in Healy Hall again on December 2, 1986. When she learned that Maura had been previously barred, she arrested him for unlawful entry.

Maura testified at trial that he was a student at American University. He said that in January 1986, he had been on leave from school to earn money to pay for future semesters. He admitted that he had been stopped by Piper in January 1986 and that he had read, signed, and understood the barring notice; but, he added that he did not believe he was unlawfully on the campus. Maura further testified that, in August 1986, he had registered for a class at American University in the academic program for experimental learning. Although he had paid the initial registration fee, he had not paid the course fee because he had not had enough money for it. He stated that when he had been stopped by Piper in December 1986, he had believed that he had a right to be on campus because, as a registered student at American University, he could use the libraries at other universities.

At trial, two character witnesses testified that Maura had a good reputation for truthfulness. Lloyd Hamilton, who had known appellant for five years, testified that Maura had a reputation as an "honest" and "reliable" person. Steve Tapschatt, who had known Maura for six years, testified that Maura was "reliable." Neither witness had heard of appellant's arrest in 1986 for attempted robbery, but each said that the arrest did not change his opinion as to appellant's truthfulness.

## II.

██ Appellant argues that the trial court abused its discretion in allowing the questions about appellant's 1986 arrest on cross-examination of his character witnesses because the questions were more prejudicial than probative. The trial court did not make a finding on the record that the impeachment questions were more probative than prejudicial, but the record suggests no abuse of discretion in allowing the questions.

Appellant's veracity was important because conviction for unlawful entry depended on whether the jury believed appellant's testimony that he had had a good faith belief in his right to be on the Georgetown campus despite the barring notice against him. *See Crews v. United States*, 514 A.2d 432, 435 (D.C.1986). Appellant's 1986 arrest was probative, therefore, because it tested the witnesses' knowledge of information inconsistent with defendant's reputation in the community for truthfulness. *See Askew v. United States*, 540 A.2d 760, 761 (D.C.1988); *Morris v. United States*, 469 A.2d 432, 435 (D.C.1983). The prejudice to appellant, moreover, was not great. The arrest occurred during the period of time that the character witnesses knew appellant, and it took place in the community from which the character witnesses were reporting. *See Awkard v. United States*, 122 U.S.App.D.C. 165, 352 F.2d 641 (1965) (abuse of discretion where trial court permitted questioning of character witnesses about prior arrests and witnesses had no knowledge of defendant's reputation in community at time she was arrested). Accordingly, there was reason to believe the witnesses might have heard about it. In addition, defense counsel and the trial court brought out before the jury the fact that the arrest had been "nol-prossed" by the government and, inferentially, that the arrest therefore may not have had much of an impact on appellant's reputation. Defense counsel fully explored the effect of the arrest on appellant's reputation for truthfulness, and each witness stated that the arrest did not affect his opinion as to appellant's truthfulness. In light of the

relevance of appellant's arrest to his reputation for veracity and of the minimal prejudice from the questions, we conclude there was no abuse of discretion in permitting them. *See Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948).

### III.

■ Appellant Maura next contends that the trial court committed reversible error by failing to give *sua sponte* a cautionary instruction limiting the purpose for which evidence of Maura's earlier arrest was admissible. We have held that when a defendant is impeached with his own prior convictions, the defense fails to request a limiting instruction, and the trial court does not give *sua sponte* either an immediate cautionary instruction or a final jury instruction on the limited purpose of the evidence, the trial court's instructional failure is plain error requiring reversal unless harmless. *Cobb v. United States,* 252 A.2d 516, 517 (D.C.1969); *see Dixon v. United States,* 287 A.2d 89, 100 (D.C.) (dicta), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

More specifically, in *Cobb,* the defendant, who testified, was impeached with his prior conviction for violating the Marijuana Tax Act. Defense counsel failed to ask for a limiting instruction, and the trial court did not give one. We found plain error but held it harmless. *Cobb,* 252 A.2d at 517. Three years later in *Dixon,* a criminal defendant testified and was impeached with a petit larceny conviction. Trial counsel did not request an immediate cautionary instruction but the trial court, in its general charge to the jury, did instruct that the defendant's conviction could only be used to test defendant's credibility. *Dixon,* 287 A.2d at 91. The jury convicted. On appeal, Dixon claimed plain error in the trial court's failure to give *sua sponte* an immediate cautionary instruction. This court affirmed, declining to extend by analogy the rule of *Lofty v. United States,* 277 A.2d 99 (D.C.1971), that the trial court commits plain error in failing to give an immediate cautionary instruction when an attorney impeaches his or her own witness with a prior inconsistent statement. *Dixon,* 287 A.2d at 99.

We reasoned in *Dixon* that, as a general rule, counsel must request an instruction in order to preserve the issue for appeal and that *Lofty* accordingly represented an exception for a type of evidence that posed so much danger of jury confusion that it justified a trial court obligation to give *sua sponte* an immediate cautionary instruction. *Id.* We concluded that the danger was not as great when a defendant is impeached with prior convictions and concluded that, in light of the limiting instruction in the final charge to the jury, the court's failure to give an immediate cautionary instruction was not plain error. *Id.* at 99. We then reaffirmed *Cobb.* Although the issue was not presented in *Dixon,* we stressed that "the omission altogether of any cautionary instruction on a prior conviction admitted for impeachment would seem to affect defendant's substantial rights, unless it could be shown under the facts of the particular case that such omission was harmless." *Id.* at 100 (citing *Cobb* ).

After *Dixon,* we decided *Johnson v. United States,* 387 A.2d 1084 (D.C.1978) (en banc), in which we further limited *Lofty* and reaffirmed the general rule that errors must be objected to at trial or receive only plain error review on appeal. In *Johnson,* the defendant testified, and, after the government had laid the proper foundation, the government impeached his testimony through another witness who described the defendant's prior inconsistent statement. Defense counsel did not request an immediate limiting instruction and none was given, although the trial court did give a final instruction on the limited purpose of the prior inconsistent statement. *Id.* at 1085. This court affirmed. We concluded that *Lofty* "unnecessarily and inappropriately broadened the scope of the plain error rule and ran afoul of the well-settled requirement that trial errors must be objected to at the time they occur if they are to be considered on appeal." *Id.* at 1086. We emphasized that "there is a line beyond which we will not make an exception to the

general rule that unobjected to error will not be noticed on appeal...." *Id.* at 1087.

Since *Johnson,* we have consistently applied the plain error standard as the appropriate test for reviewing the failure to give a limiting instruction in the absence of a defense request. *See, e.g., Allen v. United States,* 495 A.2d 1145, 1152 (D.C.1985) (en banc) (collecting cases); *Jones v. United States,* 477 A.2d 231, 241 (D.C.1984) (failure to give any cautionary instruction on use of evidence of appellant's prior threats and gun possession not plain error).

In line with this trend of cases, we decline to extend the *Cobb* rule—applicable to the impeachment of a testifying defendant with his or her own prior conviction—to the circumstances of this case: impeachment of a defense character witness with the defendant's prior arrest. Requiring counsel to object to instructional error affords the trial court an opportunity to correct any error and thus to reduce the likelihood of the need for a new trial. *Johnson,* 387 A.2d at 1089; *Watts v. United States,* 362 A.2d 706, 708 (D.C.1976) (en banc). This requirement, therefore, should be encouraged. Failure to request an instruction, moreover, may be a matter of tactics, in order to minimize the significance of adverse evidence. Having chosen not to object or to request a particular instruction, a defendant as a general rule should not be allowed to claim the omission as error on appeal. *See Jones,* 477 A.2d at 242–43. Finally, the plain error standard does not foreclose review; it only limits reversal to situations where "substantial rights were clearly and prejudicially denied below." *Johnson,* 387 A.2d at 1088 (footnote omitted); *see also Watts,* 362 A.2d at 709.

In addition to noting the trend of cases since *Cobb,* we can identify significant differences between impeaching a witness with his or her own prior convictions and testing a character witness's credibility with the defendant's prior arrest. In the first place, an arrest is not a conviction. Even less is an arrest like a conviction when, as here, the charges are dropped. Therefore, however, the jury may have used the arrest evidence, without the cau-

tion of a limiting instruction, the sting was inherently much less than from a conviction.

Second, when a defendant is impeached with a prior conviction, the question and response form part of the defendant's own testimony. Without a limiting instruction, therefore, the jury may consider the defendant's impeachment as evidence of propensity to commit crimes. *See Dixon,* 287 A.2d at 99 n. 26. In contrast, when a character witness's testimony about the defendant's good character is tested by reference to the defendant's prior arrest (or conviction), the question is not as directly linked to the merits of the defense; it is directed at the defendant's general reputation. Thus, the defendant's guilt or innocence is less directly implicated than it is when the defendant is testifying.

 Impeachment of a testifying defendant with a prior conviction as in *Cobb,* therefore, is much more prejudicial than impeachment of a character witness with a defendant's prior arrest. Consequently, we are satisfied that, if counsel fails to request, and the trial court fails to give, a limiting instruction either immediately or in the general charge to the jury, plain error, not harmless error, review is appropriate.

 Under the circumstances here, we find no plain error in the trial court's failure to instruct the jury that Maura's prior arrest was to be used only to evaluate the character witnesses' knowledge of Maura's reputation. The evidence against Maura was strong. He had signed a barring notice acknowledging that he was not allowed to be on the Georgetown campus. Maura's defense was that, as a student at another university, he had a right to use the Georgetown library. The prosecution showed, however, that Maura was not in the library building and that he was not registered as a student at another university, either at the time he was barred or at the time he was arrested. The prosecution also impeached Maura's character witnesses with Maura's prior arrest. While this impeachment of Maura's character witnesses did go to Maura's reputation for truthfulness, the impact of that impeachment

was minimal. The prosecutor only asked a single question of each witness and only mentioned the arrest once again in closing argument. Defense counsel and the trial court told the jury on several occasions that the case based on the arrest had been "nol-prossed" and, in context, made it clear this meant that the charges had been dropped. Moreover, defense counsel showed through redirect examination that the arrest had little impact on the witnesses' evaluation of Maura's reputation for veracity. Counsel then argued, in closing, that the arrest was meaningless because "anyone can get arrested." Although Maura would have been entitled to a limiting instruction if his counsel had requested one, *see Jones,* 477 A.2d at 241 & n. 25, we conclude that the court's failure to give one, absent a request to do so, did not prejudice Maura's substantial rights. *Watts,* 362 A.2d at 709.

*Affirmed.*