Amos M. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 89–430.

District of Columbia Court of Appeals.

Submitted June 28, 1990.

Decided Aug. 23, 1990.

Richard S. Bromberg, Washington, D.C., appointed by this court, was on the brief for appellant.

* *Senior Judge* MACK concurs in the result.

1. D.C.Code § 33–541(a)(1) (1988).

Jay B. Stephens, U.S. Atty. and John R. Fisher, Thomas J. Tourish, Jr., Kevin J. Murphy, and Elizabeth A. Bresee, Washington, D.C., Asst. U.S. Attys., were on the brief for appellee.

Before BELSON and TERRY, Associate Judges, and MACK, Senior Judge.*

TERRY, Associate Judge:

Appellant was convicted of distribution of phencyclidine (PCP),[1] distribution of marijuana,[2] and possession of cocaine.[3] On appeal he contends that the trial court committed plain error in failing to give an immediate limiting instruction to the jury when the government allegedly impeached its own witness, and that a comment by the prosecutor in his closing argument amounted to misconduct requiring reversal. We reject both contentions and affirm the judgment of conviction.

I

The evidence showed that appellant sold a plastic bag of marijuana laced with PCP to a man named Bruce Smith. An undercover officer, Victor Graves, witnessed the sale from a secret observation post. He radioed descriptions of Smith and appellant to an arrest team, and in short order both were arrested. In appellant's possession were two plastic bags containing cocaine; in Smith's possession was the bag of PCP-laced marijuana. Both Smith and appellant were taken to the police station in the same scout car. No one else was in the car, according to the testimony of two of the arresting officers, except the officer who was driving. Smith eventually pleaded guilty to possession of marijuana and agreed to testify at appellant's trial.

During his direct testimony, Smith said he could not recall whether the person in the police car with him was the same person who had sold him the PCP-laced marijuana. The prosecutor then started to ask

2. *Id.*

3. D.C.Code § 33–541(d) (1988).

him about the proceedings at which he had entered his guilty plea. Defense counsel immediately objected. At the ensuing bench conference, the prosecutor said:

> Your Honor, *first,* I want to refresh the witness' recollection. He said he doesn't recall. Then, if he still doesn't remember *after that,* then I may impeach my own witness, that's correct. I believe the Court can determine he's a hostile witness and I may do so. [Emphasis added.]

The discussion then turned to other matters.[4] After the bench conference was over, the prosecutor resumed his questioning of Smith:

> Sir, I'm going to hand you ... a transcript of that [plea proceeding] to see *if that refreshes your recollection as to what happened.* I just want you to refer to pages 11, 12, 13, and 14. I'd like you to look at that and see *if that refreshes your recollection.*

> \*    \*    \*    \*    \*    \*

> Q. Now, *after having read this transcript, do you recall now* whether Mr. Jones that—or that the person that was in the squad car with you was the same person that gave you the PCP and marijuana?

> A. Yes, sir.

> Q. Is that yes, it was the same person?

> A. I said yes. If I can elaborate, all right—

> Q. Okay.

> A. The reason I made—I was confused about not being able to recognize the picture, but I was under the assumption that the guy in the scout car with me was the guy who sold me the PCP, but I was not—I was unable to identify him.

> \*    \*    \*    \*    \*    \*

> Q. Was there a person that was arrested a short time after you were arrested on October 1st, 1988?

> A. Yes, sir.

> Q. And was he put in the squad car with you?

> A. Yes, sir.

> Q. Was that the same person that gave you the PCP and marijuana?

> A. Yes, sir. [Emphasis added.]

In the cross-examination which followed, defense counsel succeeded in getting Smith confused, so that at one point Smith said he did not know whether appellant was the one who had sold him the drugs.[5] Nevertheless, at no time did Smith ever recant his statement, made first at the plea proceeding and again in the passage just quoted, that *the man who rode with him in the police car* was the man who had sold him the drugs.

Appellant now contends that the prosecutor impeached his own witness, so that the court was obliged *sua sponte* to give an immediate limiting instruction to the jury. He relies principally on *Lofty v. United States,* 277 A.2d 99 (D.C.1971), in which this court broadly held that "whenever evidence is brought in which is admissible only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction." *Id.* at 101, citing *United States v. McClain,* 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971) (other citations omitted). *Lofty* was almost totally overruled a few years later in *Johnson v. United States,* 387 A.2d 1084 (D.C.1978) (en banc), but the *Johnson* court specifically "reaffirm[ed] the validity of *Lofty*'s narrower holding that a sua sponte cautioning instruction is required when a party, surprised by its own witness, impeaches the witness with a prior inconsistent statement in accordance with [D.C. Code § 14–102 (1989).]" *Id.* at 1087 n. 5. Consequently, if what happened here was

---

4. The main focus of the bench conference was on whether Smith's statement was inadmissible under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The court reminded defense counsel that *Bruton* was inapplicable, since the former co-defendant, Smith,

was in fact testifying and would be subject to cross-examination.

5. When counsel asked, "Mr. Smith, isn't it true that at this very moment, you really don't know if Mr. Jones sold you those drugs or not?", Smith replied, "Right, I don't."

in fact an impeachment by the government of its own witness with a prior inconsistent statement, *Lofty* would probably require us to reverse.

On the present record, however, we are satisfied that this was not an impeachment based on a claim of surprise but rather, as the government maintains, a refreshing of the witness' recollection which called for no limiting instruction. The distinction between the two was recognized in our decision in *Watts v. United States*, 362 A.2d 706 (D.C.1976) (en banc). In *Watts* the government was surprised by the testimony of one of its own witnesses. The trial court permitted the prosecutor to impeach the witness with a prior inconsistent statement which the witness had made to the grand jury, and defense counsel did not ask for a cautionary instruction. On appeal Watts contended that the court's failure to give a limiting instruction *sua sponte* was plain error. We rejected the argument, saying:

> This argument has superficial appeal in light of this court's decision in *Lofty*.... However, *Lofty* was limited by *Dixon v. United States*, 287 A.2d 89, 98–99 (D.C.), *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). [Other citations omitted.] Additionally, two factors distinguish the instant case from *Lofty*. Upon redirect examination by the prosecutor, [the witness] acknowledged the truth of the statement she had made to the grand jury. In so doing, *she adopted the prior statement, and it became part of her in-court testimony, subject to cross-examination.*

*Watts, supra,* 362 A.2d at 712 n. 11 (emphasis added).[6] For the proposition that we have here italicized, the court quoted with approval the following language from a Second Circuit opinion:

> When a witness thus affirms the truth of a prior statement, the earlier state-

ment is to be considered "not only as bearing on the credibility of the witness but as affirmative evidence." ... [T]he trier of the facts has "two conflicting statements ... of equal force as evidence."

*United States v. Borelli*, 336 F.2d 376, 391 (2d Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) (citations omitted). In a more recent case, we applied *Watts* to a similar set of facts and concluded:

> Indeed, if the witness' statements are viewed, as the government argues they should be, as an adoption of her prior statement to the prosecutor, then her testimony would constitute substantive evidence.... Under this reading, the trial court's failure to give a limiting instruction would not constitute any error.

*Stewart v. United States*, 490 A.2d 619, 625 (D.C.1985), citing *Watts* and *Borelli*.

In the case before us, we are satisfied that Smith, like the witnesses in *Watts* and *Stewart*, adopted his prior statement from the plea proceeding. Although he was obviously reluctant to finger appellant as the seller of the drugs,[7] he did state on the witness stand, as at the plea hearing, that the man who rode with him in the police car was the seller. Other evidence (from various police officers) established that the second passenger in the police car was appellant, and that he had been arrested for selling the drugs to Smith. Officer Graves, who had witnessed the sale, positively identified appellant as the seller. The prosecutor made clear from the beginning that his plan was to try to refresh Smith's recollection first, and that only if that effort failed would he claim surprise under D.C.Code § 14–102 and seek leave to impeach him. Because he succeeded in refreshing Smith's recollection, he never had to claim surprise and move on to the second stage of his plan. Without a claim of surprise and actu-

---

6. The second factor distinguishing *Watts* from *Lofty* was a lack of prejudice resulting from the trial court's failure to give a cautionary instruction.

We note that when *Watts* was decided, the *Johnson* case, which overruled *Lofty* in almost all respects, was two years in the future.

7. It was brought out on redirect examination that Smith was residing in the same prison dormitory as appellant, and that both of them would go back there when the trial was over.

al impeachment, *Lofty* was inapplicable. We therefore hold that there was no plain error in the trial court's failure to give an immediate limiting instruction.

## II

 During his rebuttal argument, the prosecutor said:

> But that's not what's most important because what's most important is Officer Graves' testimony, because Officer Graves told you what happened. And how do you weigh his testimony? *Does Officer Graves have a conviction in 1988 for attempted possession of PCP?* [Emphasis added.]

Defense counsel immediately objected "to any reference in the closing to the defendant's conviction."[8] After further discussion, the court sustained the objection, and the prosecutor moved on to another subject. Appellant now maintains that the comment we have italicized was improper and requires reversal. We disagree.

 To begin with, there is no impropriety *per se* in a prosecutor's referring in closing argument to the defendant's prior convictions if the defendant has testified at trial. Such convictions bear directly on the defendant's credibility as a witness. D.C. Code § 14–305(b)(1) (1989); *see Hill v. United States*, 434 A.2d 422, 428–429 (D.C. 1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982). To be sure, we have reversed convictions when prosecutors have made improper reference to a defendant's prior convictions, but in those cases the basis for reversal has usually been the manner in which the reference was made or the prejudicial juxtaposition of a conviction with other parts of a prosecutor's cross-examination or argument. *E.g., Bailey v. United States*, 447 A.2d 779, 781–783 (D.C.1982); *Fields v. United States*, 396 A.2d 522, 526–528 (D.C.1978). There is nothing inherently improper in the mere mention of a defendant's prior convictions in a prosecutor's closing argument, provided the defendant has testified and

thereby placed his or her credibility in issue.

 Apparently recognizing this, appellant challenges not the rhetorical question about Officer Graves' lack of a prior conviction but the comparison of that fact with appellant's criminal record. We hold that there was no impropriety in the prosecutor's comment. While it is true that a prosecutor may not argue that a police officer is entitled to greater credence than other witnesses merely because he or she is a police officer, *see Hinkel v. United States*, 544 A.2d 283, 285 (D.C.1988), it is not true that a prosecutor is prohibited from contrasting a police officer's credibility with the credibility of another witness, even the defendant. We dealt with this precise point in *Hinkel:*

> [W]hen defense counsel in closing argument attacks the credibility of government witnesses, a prosecutor in rebuttal argument may properly contrast the credibility of defense witnesses, *including the defendant himself,* with the credibility of the government witnesses, *including police officers.*

*Id.* (emphasis added), citing *Reed v. United States*, 485 A.2d 613, 620 (D.C.1984). In the instant case, defense counsel had specifically attacked Officer Graves' credibility, going so far as to suggest that the officer had "a vested interest in the outcome of this case," that he had "exaggerated" his testimony, and that he had "a very important reason to want to say why they [Smith and appellant] were right there." The prosecutor's remark was an attempt to restore some balance to the skirmish over the relative credibility of the witnesses. We hold that the language we have quoted above from *Hinkel* is dispositive of this issue and that the prosecutor engaged in no misconduct. Defense counsel's objection at trial should not have been sustained.

*Affirmed.*

---

**8.** Appellant had been impeached on cross-examination with three misdemeanor convictions, in-

cluding one in 1988 for attempted possession of PCP.