**Toronto T. GILLIAM, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CF–537.

District of Columbia Court of Appeals.

Feb. 19, 1998.

Jeffrey T. Green and Robert C. Nissen, Washington, DC, were on the petition for rehearing or rehearing en banc for appellant.

Mary Lou Leary, United States Attorney, and John R. Fisher and Laura A. Cordero, Assistant United States Attorneys, were on the opposition to the petition for rehearing or rehearing en banc.

Before WAGNER, Chief Judge, and TERRY, STEADMAN, SCHWELB, FARRELL, KING, RUIZ, and REID, Associate Judges.

## ON REHEARING EN BANC

PER CURIAM:

We granted rehearing en banc without oral argument in this case to iron out remaining differences in our decisions that relate to the correct standard of appellate review in criminal cases when the trial court has failed *sua sponte* to instruct the jury on the limited use of evidence properly admitted for one purpose but not another. In good part the dispute is over the continuing vitality of *United States v. McClain*, 142 U.S.App. D.C. 213, 440 F.2d 241 (1971), a decision originally binding on divisions of this court. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). Appellant cites *McClain* and *Lucas v. United States*, 436 A.2d 1282 (D.C.1981), for the principle that such failure to instruct at all during trial, even without request, is reversible error unless the government can demonstrate harmless error under D.C.Code § 11–721(e) (1995) and *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)—at least in a case, such as this, where the government introduces through impeachment inherently prejudicial evidence of past violence by the defendant. The government responds that *McClain* has effectively been rejected by this court in decisions starting with *Johnson v. United States*, 387 A.2d 1084 (D.C.1978) (en banc), which stand for the principle that "[t]he trial court has no general duty to instruct the jury *sua sponte*," *Allen v. United States*, 495 A.2d 1145, 1150 (D.C.1985) (en banc), and that failure to give an unrequested limiting instruction with regard to any evidence is reviewable only for plain error. *See United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (defining plain error).

We do not attempt to harmonize all of the decisions cited by the parties.[1] Sitting en banc, we hold that in any case—without exception—in which evidence has been properly admitted for a specific purpose and the defense has not requested an instruction limiting jury consideration of it to that use, the trial court's failure to instruct in that manner on its own initiative is reviewable only for plain error. That is the rule most in keeping with our previous en banc decisions on this issue. *Allen, supra; Johnson, supra; cf. Watts v. United States*, 362 A.2d 706 (D.C. 1976) (en banc) (reviewing for plain error claim of instructional error not raised in trial court). It is also the rule most in keeping with the obligation of the trial court as set forth in FED.R.EVID. 105, which states, consistently with our decisions, *see Allen, supra:* "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly" (emphasis added). *See United States v. Rhodes*, 314 U.S.App. D.C. 117, 121–22, 62 F.3d 1449, 1453–54 (1995) (holding *McClain* rule embodied in later D.C. Circuit decisions incompatible with FED.R.EVID. 105). And it is the rule most in keeping with the purpose for requir-

---

1. Conceptually, for example, it is hard to see why unobjected-to failure to instruct following impeachment of an adversary's witness with prior inconsistent statements should be reviewed under one standard, *see Johnson v. United States, supra* (plain error), while similar failure to instruct after impeachment of a party's own witness is reviewed under another, *see Lucas v. United States, supra* (harmless error). Insofar as the difference may have rested on the former limitation imposed by D.C.Code § 14–102 on impeachment of one's own witness, *see, e.g., Johnson*, 387 A.2d at 1087 n. 5, we note that § 14– 102 has been amended to delete that limitation. *See* § 14–102(a) (1995) ("The credibility of a witness may be attacked by any party, including the party calling the witness").

*Compare also Cobb v. United States*, 252 A.2d 516, 517 (D.C.1969) (failure to instruct *sua sponte* after impeachment of defendant with prior convictions reviewed for harmless error) *with Maura v. United States*, 555 A.2d 1015, 1018 (D.C.1989) (failure to instruct *sua sponte* after impeachment of defense character witness with defendant's prior arrest for violent crime reviewed for plain error).

ing such requests for a jury instruction—that is, " 'our need to encourage all trial participants to seek a fair and accurate trial the first time around' "—while insuring that appellate courts intervene despite default of counsel " 'in those circumstances in which a miscarriage of justice would otherwise result.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

For the reasons stated by the division, whose unpublished opinion we attach as an appendix to this opinion, the failure of the trial court to instruct *sua sponte* on the admission of evidence for a limited purpose in this case was not plain error. We leave undisturbed the remaining portions of the division opinion as well, and reaffirm its judgment upholding the convictions.

*So ordered.*[2]

### APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

No. 95–CF–537

TORONTO T. GILLIAM, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the

District of Columbia

Criminal Division

(Hon. Zinora Mitchell–Rankin, Trial Judge)

(Argued June 11, 1997
Decided July 18, 1997)

Before FERREN, STEADMAN, and RUIZ, *Associate Judges.*

### MEMORANDUM OPINION AND JUDGMENT

Toronto T. Gilliam appeals from his conviction for extortion of a senior citizen,

D.C.Code §§ 22–3851(a), –3901(a) (1996 Repl.), and first-degree theft of a senior citizen, D.C.Code §§ 22–3811, –3812, –3901(a). He was sentenced to prison for three to nine years on each count, with the sentences to run concurrently to each other; all but twenty-four months of the combined sentences were suspended. The Court also required Gilliam to make restitution to his victim, Whitfield Arnett, Jr., in the amount of $70,-000. On appeal, Gilliam argues that: (1) numerous instances of "prosecutorial misconduct" during closing arguments require reversal; (2) the trial court improperly allowed the government to impeach a defense witness's testimony with Gilliam's prior conviction; (3) the trial court erred in excluding expert testimony on discourse and phonetic analysis offered by Gilliam; and (4) the trial court erred in imposing restitution. Finding all of these contentions unpersuasive, we affirm.

### I.

Because Gilliam failed to object to any of the statements by the prosecutor challenged on appeal, we review for plain error. *See McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991). We will reverse, therefore, only if the prosecutor's comments were so prejudicial as to impair the very integrity of the trial. *See id.* Judged under this standard, the prosecutor's allegedly improper arguments, both individually and cumulatively, do not require reversal. Gilliam argues that the government improperly identified a female voice—who allegedly said "He ain't gonna live to see Christmas"—on a tape-recorded conversation between Gilliam and Arnett, as Mrs. Gilliam, who testified at trial on behalf of her son. After the government's closing argument, the trial court told the jury that "the evidence of record is that it's an unidentified female" and that the jurors could "draw whatever inferences you believe are reasonable, in light of that evidence [and] the application of your common sense." During the government's rebuttal argument, the prosecutor said that the unidentified voice "sure did sound like" Gilliam's mother.

---

2. The court wishes to thank the named attorneys for appellant, as well as their law firm, Sidley &

Austin, for their exemplary representation of appellant *pro bono publico* in this case.

While the prosecutor's statement was somewhat unartful in suggesting his personal opinion, the prosecutor was essentially telling the jurors, especially in light of the judge's sua sponte instruction, that they had heard the voice on the tape and Gilliam's mother's voice at trial, and that they could determine whether the voice was one and the same. We believe the government's argument was, on the whole, reasonable and unlikely to substantially prejudice the jury.

The remaining contentions of improper argument are easily rejected. The prosecutor responded to a statement of defense counsel in closing argument (that Arnett had never told his son that he was being extorted by Gilliam) by noting that the prosecutor, because of the hearsay rule, was not allowed to question Arnett's son about what his father had told him. The government's argument was a proper response to Gilliam's own closing arguments. *See Johnson v. United States,* 613 A.2d 888, 896 (D.C.1992). In response to Gilliam's theory that Arnett had spent over $80,000 on liquor, drugs, and women, the government argued that "the defendant [made] a chump out of Mr. Arnett. He fooled him. Don't let him do that to you." This statement, as well as similar arguments questioning the credibility of Mrs. Gilliam's testimony and the entire defense theory of the case, coupled also with references to the victim's vulnerability, were a fair comment on the evidence; they were far from the improper expression of the prosecutor's personal opinion, personal attack on defense counsel, or appeal to the sympathy of the jury that Gilliam contends occurred. *See Scott v. United States,* 619 A.2d 917, 928 (D.C.1993); *McGrier,* 597 A.2d at 43.

## II.

We find no error in the trial court's admission of Gilliam's prior conviction. Mrs. Gilliam testified that Arnett had given her son a gun and some money to kill "Mike," Gilliam's best friend. When the prosecutor sought to ferret out why Mrs. Gilliam wasn't concerned that Arnett had given her son a gun, and that her son was hanging around with Mike—who gave a lot of parties with women and liquor—

Mrs. Gilliam testified she was not particularly worried about the situation because "[g]un or no gun ... I know that he is not a violent person. ... I know that he don't and he ain't going to try to hurt nobody." Over defense counsel's objection, the government impeached Mrs. Gilliam's testimony with the fact that Gilliam had been convicted of hurting someone. The trial court limited the government by not allowing it to reveal the nature of the conviction—child abuse—but Mrs. Gilliam made a vague reference to Gilliam's having "to go to Court on one of his daughters." We find no abuse of discretion in the trial court's decision to admit this evidence, which impeached Mrs. Gilliam's testimony and undermined her credibility in light of her assertions that her son would not hurt anyone. *See, e.g., Fields v. United States,* 547 A.2d 138 (D.C.1988); *Robinson v. United States,* 513 A.2d 218, 221 (D.C.1986).

The trial court did not commit plain error by failing to issue a sua sponte instruction to the jury on the limited use of Gilliam's conviction. *See Johnson v. United States,* 387 A.2d 1084, 1088 (D.C.1978) (en banc) (holding there is no "absolute sua sponte obligation to issue an immediate cautionary instruction whenever evidence is brought in which is admissible only for a limited purpose," and concluding that plain error will occur only if the failure to give such cautionary instruction denies defendant "a fair trial" by "clearly and prejudicially" infringing "substantial rights"). Gilliam did not request such an instruction, and we believe that, given the vagueness of Mrs. Gilliam's answers and the fact that the conviction was never mentioned again at trial, Gilliam's counsel may have simply made a tactical choice not to highlight the conviction with supplemental jury instructions. *See, e.g., Maura v. United States,* 555 A.2d 1015, 1019 (D.C.1989). Admission of the conviction did not raise such a significant likelihood of confusion and misuse of the evidence as to require the court to issue a sua sponte limiting instruction. *Cf. Towles v. United States,* 428 A.2d 836, 842 (D.C.1981) (finding plain error in failure to give cautionary instruction where government impeached its own witness with a prior inconsistent statement). The reference to the conviction did not occur during Gilliam's own testimony, as happened

where we have found plain error. *See Cobb v. United States,* 252 A.2d 516, 517 (D.C. 1969). The likelihood of misuse also was reduced because Gilliam's prior conviction was for a crime entirely different from the kind with which he was charged in the present trial.

## III.

The trial court did not abuse its discretion in excluding the proposed expert testimony of Dr. Shuy. Gilliam offered Dr. Shuy as an expert in "discourse analysis" to opine on the meaning of the tape-recorded conversations between Gilliam and Arnett. The trial court concluded that Dr. Shuy's testimony concerned matters that were not beyond the ken of the average layperson, and that his expert testimony would therefore not be permitted. *See Middleton v. United States,* 401 A.2d 109, 130 (D.C.1979). There was no language on the tape that jurors would have been unable to comprehend without the assistance of expert testimony. Gilliam, moreover, was permitted to use the charts prepared by Dr. Shuy—showing who introduced certain topics into the conversation and the like—during closing arguments, and to argue the same inferences and interpretations to which Dr. Shuy would have testified. Under these circumstances, we find no abuse of discretion. *See, e.g., United States v. Devine,* 787 F.2d 1086, 1088 (7th Cir.1986) (affirming exclusion of Dr. Shuy's discourse analysis because it would "not have given the jury significant help in understanding the evidence"); *United States v. Kupau,* 781 F.2d 740, 745 (9th Cir.1986) (same); *United States v. DeLuna,* 763 F.2d 897, 912 (8th Cir.1985) (same with respect to unidentified expert).

Gilliam also objects to the trial court's exclusion of Dr. Shuy's proposed testimony on his "phonetic analysis" of one disputed phrase on the tape. The government contended, as noted above, that an unidentified female on the tape came on the phone and said: "He ain't gonna live to see Christmas." Gilliam contended the female said: "He ain't gonna get no (IA[inaudible]–2 syllables)." Dr. Shuy was prepared to testify that the disputed phrase contained eight syllables, whereas the government's version contained nine syllables. The trial court, relying on the fact that the tape was admitted in evidence while the competing transcripts were not, refused to allow Dr. Shuy to bolster the defense's interpretation. Gilliam's pretrial motion in limine to allow the expert testimony of Dr. Shuy had referred only to discourse analysis; up until the very end of the trial, Gilliam consistently allowed that Dr. Shuy should be able to testify as a "fact witness" since he had prepared the transcript and determined the number of syllables in the disputed phrase. In light of this procedural background, the trial court concluded: "Unless I am going to allow the Government time to get an expert to support its version and then we will have these battles of the experts here, I don't see how or why I would permit an expert witness to give additional credence to something that quite frankly, I tell the jury they can do themselves." We find no abuse of discretion in that conclusion.

## IV.

Gilliam argues for the first time on appeal that the trial court improperly required him to make restitution to Arnett for $70,000. We find no error, plain or otherwise. Gilliam specifically asked for restitution, albeit in lieu of imprisonment, instead of in addition thereto. Nonetheless, this case differs greatly from *Sloan v. United States,* 527 A.2d 1277 (D.C.1987), where we remanded a restitution order because we were unable to determine whether the award was supported by the statutory factors. Contrary to Gilliam's contention, *Sloan* did not impose a requirement that the trial court articulate its balancing of the statutory factors; it merely held that if the trial court's analysis fails to make clear the appropriateness of restitution under the statutory scheme, a remand is required. *See id.* at 1290. In the present case, by contrast, the facts adduced at trial demonstrated the monetary injury to Mr. Arnett. Gilliam even suggested to the judge that he could make restitution in the amount of $400 a month. We see no reason to conclude that the trial court erred in imposing restitution.[1]

---

1. Gilliam contends the court improperly imposed

restitution in the "almost ludicrous" amount of

\* \* \* \*

For the foregoing reasons, the judgment appealed from is hereby affirmed.

Robert C. Nissen, Esquire

1722 Eye Street, N.W.

Washington, DC 20006

John R. Fisher, Esquire

Assistant United States Attorney

---

$2,000 a month. Nowhere, however, does the sentencing order require Gilliam to make complete restitution during his three year period of probation. Instead, the order provides that restitution shall be in monthly installments in the amount "determined by PO" (presumably the probation officer). There is no reason to believe, therefore, that Gilliam will be unable to make the restitution payments. In any event, Gilliam may ask for a modification of the restitution decree because of changed economic circumstances. *See* D.C.Code § 16–711(d) (1997 Repl.).